MARY STOUMEN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26353, 55740–55742. Filed March 28, 1957.

*Llewellyn A. Luce, Esq.*, for the petitioners.
*Stephen P. Cadden, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Kenneth Stoumen, Transferee, Docket No. 55740; Lois Stoumen Deutsch, Transferee, Docket No. 55741; Eileen Stoumen, Transferee, Docket No. 55742.

TIETJENS, *Judge:* The Commissioner determined that the petitioners are liable as transferees of the assets of Abraham L. Stoumen, deceased, for deficiencies in income taxes and additions to the taxes, due from the Estate of Abraham L. Stoumen, deceased, as follows:

| Docket No. | Year | Deficiency | Additions to tax section 293 (b) |
|---|---|---|---|
| 26353 (Mary Stoumen) | 1943 | $60, 123. 46 | $30, 061. 73 |
| | 1944 | 68, 540. 04 | 34, 270. 02 |
| | 1945 | 51, 612. 79 | 25, 806. 40 |
| 55740 (Kenneth Stoumen) | 1943 | $2, 221. 58 | $1, 110. 79 |
| | 1944 | 2, 532. 58 | 1, 266. 29 |
| | 1945 | 1, 907. 11 | 953. 55 |
| 55741 (Lois Stoumen Deutsch) | 1943 | $2, 227. 40 | $1, 113. 70 |
| | 1944 | 2, 539. 22 | 1, 269. 61 |
| | 1945 | 1, 912. 11 | 956. 06 |
| 55742 (Eileen Stoumen) | 1943 | $2, 221. 58 | $1, 110. 79 |
| | 1944 | 2, 532. 58 | 1, 266. 29 |
| | 1945 | 1, 907. 11 | 953 55 |

There are two issues for decision: (1) Whether the petitioners, as the beneficiaries of certain insurance policies on the life of Abraham L. Stoumen, deceased, are liable as transferees for his unpaid income taxes, additions to the tax, and interest thereon, for the years 1943, 1944, and 1945, to the extent of the insurance proceeds received by them; and (2) whether petitioner Mary Stoumen, as Abraham's sole devisee and legatee, is liable as transferee for the above-mentioned taxes to the extent of the money received by her as executrix of Abraham's estate and subsequently deposited in her personal bank account.

### FINDINGS OF FACT.

Some of the facts are stipulated. Those facts and the exhibits thereto are found as stipulated and are incorporated herein by this reference.

Abraham L. Stoumen died a suicide on May 7, 1946. In 1949 the Commissioner determined a deficiency in income taxes and additions to tax for fraud, against the Estate of Abraham L. Stoumen, deceased, Mary Stoumen, Executrix, as follows:

| Year | Deficiency | Additions to tax section 293 (b) |
|---|---|---|
| 1943 | $60, 123. 46 | $30, 061. 73 |
| 1944 | 68, 540. 04 | 34, 270. 02 |
| 1945 | 51, 612. 79 | 25, 806. 40 |

In a petition to this Court (Docket No. 26354) the deficiencies were not contested but the additions to the taxes for fraud were contested. Such income taxes and additions to tax grew for the most part out of profits of Fairplay Knitting Mills, a partnership formed January 2, 1943, between Abraham and his brother Bernard Stoumen. Such partnership was engaged in the manufacture of men's sportswear. In

a Memorandum Opinion filed December 10, 1953, we approved the additions to the taxes and entered a decision in favor of the Commissioner of Internal Revenue. This decision was not appealed. The tax liabilities determined have never been paid.

Petitioner Mary Stoumen is Abraham's widow. During the taxable years she resided in Philadelphia, Pennsylvania. Mary is the executrix of Abraham's estate, which is being administered in the Orphan's Court for Philadelphia County, Philadelphia, Pennsylvania. Mary is the sole devisee and legatee of Abraham, under the terms of his will.

Petitioners Kenneth Stoumen, Lois Stoumen Deutsch, and Eileen Stoumen are Abraham's children. During the taxable years they resided in Philadelphia, Pennsylvania.

Petitioners, Mary, Kenneth, Lois, and Eileen, were the beneficiaries of certain life insurance policies on the life of Abraham. During 1946 and subsequent thereto, the proceeds of such policies were paid to them or deposited to their credit, as the designated beneficiaries of such policies, as follows:

| Beneficiary | Amount |
| --- | --- |
| Mary | $83, 775. 00 |
| Kenneth | 9, 991. 90 |
| Lois | 10, 018. 10 |
| Eileen | 9, 991. 90 |

Abraham, the insured, had the right to change the beneficiary on each of the above-mentioned life insurance policies until his death and he had the right to receive the cash surrender value of the policies or to make loans upon them. He also retained all other rights inherent in the policies. The partnership agreement executed on January 2, 1943, between Abraham and Bernard provided for payment of the premiums on the above-mentioned insurance policies, by the partnership (Fairplay Knitting Mills).

In 1947, Mary, as executrix, filed an estate tax return for the decedent, Abraham, in which she reported that no estate tax was due. Her computation was as follows:

| | |
| --- | --- |
| Donchester Manufacturing Co. stock | $625. 00 |
| Insurance | 117, 549. 10 |
| Total gross estate | $118, 174. 10 |
| Funeral expenses | $1, 399. 21 |
| Executor's commissions | 2, 500. 00 |
| Attorneys' fees | 5, 000. 00 |
| Miscellaneous administrative expenses | 493. 00 |
| Debts of decedent (including a reserve for possible debts of $100,000) | 130, 318. 20 |
| Total deductions | $139, 710. 41 |
| Net estate | None |

In 1950 the Commissioner determined a deficiency in Abraham's estate taxes in the amount of $110,614.24. He made the following adjustments: The value of the Donchester Manufacturing Co. stock was increased from $625 to $2,500; United States bonds in the amount of $100,000 and cash in the amount of $2,000 were included in the gross estate; Abraham's partnership interest was included in the gross estate at a value of $266,202.29; and executor's commissions, attorneys' fees, and debts of decedent were decreased in the amount of $2,500, $5,000, and $94,316.01, respectively. Under written stipulation it was decided in this Court (Docket No. 28958) in a decision entered on September 23, 1954, that there was a deficiency in estate tax in the amount of $37,500.

It was stipulated that Bernard was obligated to Abraham's estate in the amount of $222,002.50 as of May 7, 1946. This obligation arose by virtue of the partnership agreement between Abraham and Bernard, which provided that upon the death of eithter partner, the survivor agreed to purchase the decedent-partner's interest in the firm (for a price determined according to a formula prescribed in the agreement). Between May 7, 1946, and June 17, 1949, Bernard paid to Mary, as executrix of Abraham's estate, the sum of $77,950 in partial liquidation of the above-mentioned obligation. Mary deposited that sum in her executrix bank account but later withdrew that sum and deposited it in her personal bank account.

Abraham's only assets at the date of his death were 25 shares of Donchester Manufacturing Co. stock with a value of $2,500, his partnership interest with a value of $222,002.50, and the insurance policies on his life of which Mary, Kenneth, Lois, and Eileen were the named beneficiaries in the amount of $113,776.90.

Abraham's liabilities at the date of his death were income taxes and additions to taxes for the years 1943, 1944, and 1945 in the sum of $270,414.44 plus interest, and miscellaneous other debts in the amount of $26,807.26. None of these liabilities was discharged by Abraham's estate.

On February 8, 1952, notices of tax liens under internal revenue laws were filed against the Estate of Abraham L. Stoumen, deceased, and were served upon Bernard, Wesley Caldwell (Bernard's attorney), Henry Arronson (Mary's attorney), and the Donchester Manufacturing Co. Nothing has been collected under these liens.

The Commissioner has attempted to collect Abraham's unpaid income taxes, additions to tax, and interest thereon, from his estate and from all known creditors but has been completely unsuccessful.

ULTIMATE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Payment of the insurance proceeds of $113,776.90 to the petitioners Mary, Kenneth, Lois, and Eileen rendered Abraham's estate insolvent.

The petitioners Mary, Kenneth, Lois, and Eileen are liable as transferees for Abraham's unpaid income tax, additions to tax, and interest thereon, for the years 1943, 1944, and 1945, to the extent of the insurance proceeds received by them.

Abraham's estate was either insolvent at the time of, or was rendered insolvent by, the transfer of $77,950 from Mary, as Abraham's executrix, to herself, as Abraham's sole devisee and legatee.

The petitioner Mary is liable as transferee for Abraham's unpaid income tax, additions to tax, and interest thereon, for the years 1943, 1944, and 1945, to the extent of $77,950 received by her as Abraham's sole devisee and legatee.

OPINION.

The first issue for decision is whether the petitioners are liable as transferees under sections 311 (a) and (f) of the Internal Revenue Code of 1939 [2] for Abraham's unpaid income tax, additions to tax, and interest thereon, for the years 1943, 1944, and 1945, to the extent of the life insurance proceeds which they received as Abraham's beneficiaries at his death.

The burden of proving transferee liability is placed upon the Commissioner by statute. Sec. 1119 (a), I. R. C. 1939. To discharge the burden he must show that there was a gratuitous transfer of assets from the transferor to the alleged transferee and that the transferor was either insolvent at the time of, or was rendered insolvent by, that transfer. *Arlington F. Brown*, 24 T. C. 256 (1955) ; *J. Warren Leach*, 21 T. C. 70 (1953).

Abraham retained until his death the right to change the beneficiaries of his insurance policies. He also retained all other rights inherent in the policies. The evidence presented indicates that the premiums on the policies for 1943 and subsequent years were paid by the Fairplay Knitting Mills partnership, of which Abraham was a partner. No evidence was presented to show who paid the premiums for years prior to 1943; however, the natural assumption is that Abraham paid them himself. If the premiums were paid voluntarily by the beneficiaries, such payments must be considered as gifts to the insured. 2 Couch, Cyclopedia of Insurance Law sec. 351, and cases cited therein. In view of these facts, it is clear that Abraham made a gratuitous transfer of the insurance proceeds to the petitioners.

---

[2] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

* * * * * * *

(f) DEFINITION OF "TRANSFEREE."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

The petitioners contend that the Commissioner has failed to sustain his burden of proving that Abraham was insolvent at his death or that his estate was insolvent. They point to the fact that the Commissioner determined that for estate tax purposes Abraham had a net estate of $390,356.99, computed as follows—

| | | |
|---|---:|---:|
| Donchester Manufacturing Co. stock | $2,500.00 | |
| United States bonds | 100,000.00 | |
| Cash | 2,000.00 | |
| Partnership interest | 266,202.29 | |
| Life insurance proceeds | 117,549.10 | $488,251.39 |
| Less: Miscellaneous debts | $36,002.19 | |
| Expenses of the estate | 1,892.21 | 37,894.40 |
| | | $450,356.99 |
| Less: Exemption | | 60,000.00 |
| Net estate for additional taxes | | $390,356.99 |

and that this Court decided, in Docket No. 28958, that there was a deficiency in Abraham's estate tax of $37,500. They therefore argue that the matter of insolvency of Abraham or his estate was rendered res judicata, since the same parties and the same issues are involved in the present case as were involved in that decided case. This argument is without merit since the decision in Docket No. 28958 was under written stipulation *without* a stipulation of facts. Hence we are unable to determine whether the agreement of the parties was based on the merits or on some collateral consideration. In such a situation the doctrine of res judicata has no application. *United States* v. *International Building Co.*, 345 U. S. 502 (1953), rehearing denied 345 U. S. 978.

The Commissioner must show that Abraham was insolvent at the time of, or was rendered insolvent by, the transfer of the insurance proceeds to the petitioners. Insolvency as used here means an excess of liabilities over assets. *May R. Kieferdorf*, 1 T. C. 772 (1943), affd. 142 F. 2d 723 (C. A. 9, 1944), certiorari denied 323 U. S. 733 (1944). The Commissioner made the following computation to show that Abraham was insolvent at the date of his death:

*Assets*

| | | |
|---|---:|---:|
| Donchester Manufacturing Co. stock | $2,500.00 | |
| Partnership interest | | 77,950.00 |
| Insurance proceeds (payable to petitioners) | | 113,776.90 |
| | | $192,351.90 |

*Liabilities*

| | | |
|---|---:|---:|
| Income taxes (Docket No. 26354) | | $270,414.44 |
| Interest on taxes (approximate) | | 11,000.00 |
| Other debts | | 30,318.20 |
| | | $311,732.64 |
| Deficit | | (119,380.74) |

The Commissioner did not include in his computation $102,000 for United States bonds and cash (which he included when computing the deficiency in Docket No. 28958), which is proper, since we think that he sufficiently carried the burden of showing that there were no such assets in Abraham's estate. We agree that the inclusion of the insurance payable to the petitioners was proper and also the inclusion in liabilities of $270,414.44 for unpaid income taxes and additions to tax, as determined in Docket No. 26354, was proper. *Scott* v. *Commissioner*, 117 F. 2d 36 (C. A. 8, 1941). However, we do not agree with the other items in the Commissioner's computation and accordingly we have adjusted them. We increased the value of the Donchester Manufacturing Co. stock to $2,500 since the Commissioner failed to show that it was not worth that much and also we increased the value of Abraham's partnership interest to $222,002.50, which was stipulated by the parties to be the amount of Bernard's obligation. Interest on the unpaid income taxes to the date of Abraham's death is a proper liability; however, there was not an exact determination of the amount owing, and therefore we did not include such amount in our computation. We also reduced "Other debts" from $30,318.20 (the amount shown to be owing on the estate tax return other than the reserve for possible debts) to $26,807.26, to take account of a debt which was paid by insurance proceeds (which proceeds were not included in the computation of Abraham's assets).

Therefore, according to our calculation, the total value of Abraham's assets at his death was $338,279.40 and the total amount of his liabilities at his death was $297,221.70. Thus Abraham was not insolvent at the date of his death since his assets exceeded his liabilities by $41,057.70 at that time. However, upon payment of the insurance proceeds of $113,776.90, Abraham's estate was rendered insolvent since his liabilities then exceeded his assets by $72,719.20.

The petitioners argue that in spite of this they are still not liable as transferees for Abraham's unpaid income taxes, additions to tax, and interest thereon, since the proceeds of the insurance policies which they received were not assets or property of Abraham's estate and thus they were not "tranferee[s] of property of a taxpayer." They cite as authority *Rowen* v. *Commissioner*, 215 F. 2d 641 (C. A. 2, 1954), and *United States* v. *New*, 217 F. 2d 166 (C. A. 7, 1954). See also the recent case of *Stern* v. *Commissioner*, 242 F. 2d 322 (C. A. 6, 1957).

The *Rowen* case, which involved the same issue with which we are here concerned, held that for purposes of income tax collection a beneficiary was not intended to be classed as a transferee as to the proceeds of an insurance policy. The court said that section 311 was "directed against those to whom *assets* or *property* which belonged to the decedent and which, but for transfer, could have been distrained in his

hands, have been transferred to another." The court also said that the insurance proceeds were not ever, in any sense, the property of the decedent taxpayer. The court considered the insurance proceeds to be the property of the insurance company and that the insurance proceeds came to the beneficiary as a third party beneficiary and not as a distributee or transferee within the purview of section 311.

The Rowen case was a reversal of Ruth Halle Rowen, 18 T. C. 874 (1952). In view of this we have thoroughly reconsidered the problem in the light of the reasoning in that case. Arthur L. Lawrence, 27 T. C. 713 (1957). Our reexamination, however, convinces us that the result which we reached originally was correct, and therefore, with all due respect for the Second Circuit, we decline to follow the Rowen case. We think that in that case the court put too narrow a construction upon section .311 when it held that for the purposes of income tax collection a beneficiary was not intended to be classed as a transferee as to the proceeds of an insurance policy. Its position that the only property which can be reached through transferee liability is property which belonged to the taxpayer during his lifetime and which could have been distrained in his hands seems unduly restrictive to us.

The close relationship between the "Transferred Assets" provisions of the income tax and estate tax chapters of the 1939 Code and the analogy which results therefrom provides support for our position. Section 900 (a) (1) imposes liability upon a transferee of property of a decedent in respect of the tax imposed under the estate tax chapter of the 1939 Code. Section 900 (e) defines the term "transferee" to include heir, legatee, devisee, and distributee, and to include a person who under section 827 (b) is personally liable for any part of the estate tax. Section 827 (b) in turn imposes liability for the estate tax on a beneficiary who receives property included in the gross estate under section 811 (g). That section provides that the gross estate shall include the proceeds of life insurance payable to beneficiaries of policies on the life of the decedent if the decedent possessed at his death any of the incidents of ownership of the policy. In view of these provisions, it is clear that the beneficiary of life insurance of a decedent, who retained until his death the right to change his beneficiary, is liable as a transferee of property of the decedent in respect of the estate tax.

Section 311 (a) (1) imposes liability upon a transferee of property of a taxpayer in respect of the tax imposed under the income tax chapter of the 1939 Code. Section 311 (f) defines the term "transferee" to include heir, legatee, devisee and distributee.[3]

---

[3] Treasury Regulations 111, section 29.311–1, as well as prior regulations, give a broadened definition to the term "transferee" so that it includes "all other classes of distributees." Such definition has acquired the force of law. Kieferdorf v. Commissioner, 142 F. 2d 723 (C. A. 9, 1944).

The court in the *Rowen* case relies upon the failure of section 311 (f) to extend the definition of a transferee to include a "beneficiary," as was done by section 900 (e) when it incorporated section 827 (b), as support for its position that for the purposes of income tax collection a beneficiary was not intended to be classed as a transferee as to the proceeds of an insurance policy. In view of the history of sections 311 and 900, we think this reliance is unjustified.

Sections 311 and 900 came into existence as a part of the Revenue Act of 1926. Legislative history indicates that they were correlative provisions. House Report No. 356, 69th Cong., 1st Sess., pp. 42 and 50, 1939–1 (Part 2) C. B. 361 at 371 and 376, contained a detailed discussion on section 311 (then section 280); however, later in the same report, a complete discussion of section 900 (then section 316) was omitted since the discussion of section 311 was said to be generally applicable in explaining the effect of section 900. Until 1942, sections 311 (f) and 900 (e) were identical. At that time section 900 (e) was amended (sec. 411, Revenue Act of 1942) by adding the phrase "and includes a person, who, under section 827 (b), is personally liable for any part of the tax." We think that this amendment was not intended to change the theory of transferee liability as regards the estate tax in comparison to the income tax, but was intended merely to make specific one of the many classes of transferees normally considered to have been implicitly included within the purview of section 900 from its inception. We find support for our view in the legislative history of the amendment and in case law which was in existence prior to the amendment. House Report No. 2333, 77th Cong., 2d Sess., p. 168, 1942–2 C. B. 372, 495, briefly discusses the amendment as follows:

This section also makes more specific the definition of "transferee" in section 900 (e) of the Internal Revenue Code, which, however, is not all inclusive.

In *Edna F. Hays et al., Executors*, 34 B. T. A. 808 (1936), we held that the beneficiaries of life insurance policies, in which the decedent retained until his death, the right to change the beneficiaries, were *distributees of property of the decedent* and were therefore liable as transferees for unpaid estate taxes.

In view of the above-mentioned legislative history and case law we think that an analogy may be drawn from the estate tax to show that a beneficiary was intended to be classed as a transferee as to the proceeds of an insurance policy and that these proceeds are property of the decedent-insured for the purposes of transferee liability under the income tax.

In *Chase Nat. Bank* v. *United States*, 278 U. S. 327 (1929), the Supreme Court held that, where a decedent retained until his death the

right to change the beneficiaries of insurance policies on his life, then the passing of the insurance proceeds to the named beneficiaries at his death was a legitimate subject of the estate tax (a transfer tax). The Court said:

The statute in terms taxes transfers. Like provisions in earlier acts have been generally upheld as imposing a tax on the privilege of *transferring the property of a decedent* at death, measured by the value of the interest transferred or which ceases at death.

*     *     *     *     *     *     *

It is true * * * that the interest of the beneficiaries in the insurance policies effected by decedent "vested" in them before his death and that the proceeds of the policies came to the beneficiaries not directly from the decedent but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them.

*     *     *     *     *     *     *

the word "transfer" in the statute * * * must, we think, at least include the transfer of *property procured through expenditures by the decedent with the purpose,* effected at his death, *of having it pass to another.* [Emphasis added throughout.]

There can be no doubt that insurance proceeds are property of the decedent-insured for purposes of the estate tax, if he retained until his death the right to change the beneficiary of them.

If the proceeds of an insurance policy are property for the purpose of transferee liability under the estate tax, then, in view of the close relationship between the "Transferred Assets" provisions of the estate tax and income tax chapters of the 1939 Code, we can see no reason why the proceeds of an insurance policy should not be property for the purpose of transferee liability under the income tax.

We also find support for our view (that life insurance proceeds are property of the insured-decedent) outside of the tax field. A prominent author on the law of contracts says:

The term "property" is an abused term, seldom defined or subjected to careful analysis, and nearly always used to attain some desired end with variable underlying assumptions that are not expressed. * * * The term "property" is used to denote some subject matter, usually physical in character * * * ; but, also, it is used to denote the complex group of jural relations between the individual owner of such subject matter and all other individuals. * * * In either usage, it is clear that "property rights" are manifold rights against innumerable unidentified persons, operating as a constraint upon their action for the benefit of the "property owner".

When a court says that a contract right is property, it is using the word in the first of the two senses, as a subject matter of property relations. * * * Thus, while the contract right is not a property right, it may be and is regarded as the subject matter of property rights.

*     *     *     *     *     *     *

Contract rights are assignable; they are a subject of bargain and sale. In this sense they are "property"; in this sense all contract rights conditional or unconditional, are "property". [4 Corbin, Contracts sec. 860, pp. 418-420 (1951)]

It is our opinion that, generally, when a man takes out life insurance on his own life on which he pays the premiums and retains until his death the right to change the beneficiary, he has one main purpose. That purpose is to give the insurance proceeds to a certain person at a certain time, to use as he sees fit. The certain person is the named beneficiary and the certain time is the death of the insured. When the insured dies and the proceeds have been paid to the named beneficiary, the main purpose of the transaction has been fulfilled, at least to the extent that the insured had control over the transaction. The insured has then accomplished what he intended to accomplish. At the moment prior to the insured's death, the most he can do with any of his tangible assets is to choose his successor. This he can also do with his insurance proceeds. In this sense we think the insurance proceeds are as much the property of the insured as are any of his tangible assets. There is no doubt that the Government may subject a named successor to transferee liability under section 311 (a) (1) to the extent of the tangible assets distributed to him subsequent to the insured's death. Keeping in mind the purpose of the insured in taking out life insurance, we can see no reason why the insurance proceeds are not just as much the property of the insured at or after his death as are his other tangible assets, for the purpose of transferee liability under section 311 (a) (1).

We hold that the proceeds of life insurance are property of the decedent-insured, within the meaning of section 311 (a) (1), where the decedent retained until his death the right to change the beneficiary of the policy. *Christine D. Muller*, 10 T. C. 678 (1948) ; *Aura Grimes Bales*, 22 T. C. 355 (1954).

Abraham could have made the policies payable to his estate and provided in his will for distribution of these proceeds to the petitioners, in which case it is clear that subsequent to distribution the petitioners would be Abraham's transferees and liable for his unpaid income tax liability. *Kieferdorf* v. *Commissioner, supra.* It is our opinion that the fact that Abraham made the insurance proceeds payable directly to the petitioners should not change that result. We think that when the insurance proceeds were paid to the petitioners as a result of Abraham's naming them the beneficiaries of the policies (where he retained until his death the right to change the beneficiaries) then this was equivalent to a transfer of the insurance proceeds from Abraham to the petitioners. See *Chase Nat. Bank* v. *United States, supra.*

The *Rowen* case held that the liability of a transferee under section 311 was governed by State law and that the case fell under the

New York Insurance Law which declared a substantive right of the beneficiary to the proceeds and nonliability to creditors, which the court held included the United States. Regardless of whether transferee liability is governed by State law, we think that State laws which limit the ability of creditors, including the United States, to follow insurance proceeds into the hands of named beneficiaries, are in substance "exemption" statutes which can not bind the Federal Government in the administration of its taxing laws. *Pearlman* v. *Commissioner*, 153 F. 2d 560 (C. A. 3, 1946); *Kieferdorf* v. *Commissioner, supra.*

We therefore hold that the petitioners are transferees of the insurance proceeds and are liable for Abraham's unpaid income tax, additions to tax, and interest thereon, for the years 1943, 1944, and 1945, to the extent of the proceeds received. *Pearlman* v. *Commissioner, supra; Christine D. Muller, supra.* Their liability is not limited to the amount by which the transfer to them rendered Abraham's estate insolvent. *Scott* v. *Commissioner, supra.*

The second issue for decision is whether the petitioner, Mary, is liable as transferee for Abraham's unpaid income tax, additions to tax, and interest thereon, for the years 1943, 1944, and 1945, to the extent of the money received by her as executrix and subsequently distributed to herself as Abraham's sole devisee and legatee.

Between 1946 and 1949 Bernard paid $77,950 to Mary as executrix of Abraham's estate, in partial liquidation of his obligation to purchase Abraham's interest in the Fairplay Knitting Mills partnership. Mary deposited these payments in her executrix bank account and subsequently withdrew them and deposited them in her personal bank account. She testified that she used that money for herself and her children.

In view of our detailed discussion of the first issue there can be no doubt that Abraham's estate was either insolvent at the time of, or rendered insolvent by, the transfer of the money to Mary in her capacity as Abraham's sole devisee and legatee. Mary is therefore liable as transferee to the full extent ($77,950) of the money received by her from Abraham's estate. *Viles* v. *Commissioner*, 233 F. 2d 376 (C. A. 6, 1956). We note that even if Mary held the money as executrix, she is still liable as transferee for Abraham's unpaid tax liability. See *Estate of Paul M. Vandenhoeck*, 4 T. C. 125 (1944).

> *Decision will be entered under Rule 50 in Docket No. 26353.*
> *Decisions will be entered for the respondent in Docket Nos. 55740, 55741, and 55742.*