## COMMISSIONER OF INTERNAL REVENUE
### *v.* STERN, TRANSFEREE.

No. 311.  Argued April 7, 1958.—Decided June 9, 1958.

*John F. Davis* argued the cause for petitioner. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *A. F. Prescott.*

*Walter E. Barton* argued the cause for respondent. With him on the brief were *William H. Beck* and *William B. Martin.*

*Benj. H. Saunders, K. Martin Worthy* and *Arthur Peter* filed a brief for the Life Insurance Association of America, as *amicus curiae,* urging affirmance.

Mr. Justice Brennan delivered the opinion of the Court.

Respondent petitioned the Tax Court for redetermination of the liability assessed against her for her deceased husband's unpaid income tax deficiencies. The Tax Court held that, as beneficiary of proceeds of her husband's life insurance exceeding the amount of the deficiencies, the respondent was liable for the full amount of the deficiencies. The Court of Appeals reversed, 242 F. 2d 322, holding that the respondent was not liable even to the extent of the amount of the cash surrender values of the policies, which was less than the amount of the deficiencies. We granted certiorari. 355 U. S. 810.

Dr. Milton J. Stern died a resident of Lexington, Kentucky, on June 12, 1949. Nearly six years later the Tax Court held that Dr. Stern had been deficient in his income taxes for the years 1944 through 1947 and was liable for the amount, including interest and penalties, of $32,777.51. Because the assets of the estate were insufficient to meet this liability, the Commissioner proceeded under § 311 of the Internal Revenue Code of 1939 [1] against respondent, Dr. Stern's widow, as the bene-

---

[1] Section 311 provides:

"(a) Method of Collection.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be

ficiary of life insurance policies held by him. The proceeds and the cash surrender value of these policies at Dr. Stern's death totaled $47,282.02 and $27,259.68 respectively. The right to change the beneficiary and to draw down the cash surrender value of each policy had been retained until death by Dr. Stern. There were no findings that Dr. Stern paid any premiums with intent to defraud his creditors or that he was insolvent at any time prior to this death.

The Court of Appeals rested its decision upon two grounds: (1) that the respondent beneficiary was not a transferee within the meaning of § 311, *Tyson v. Commissioner*, 212 F. 2d 16; and (2) that in any event Kentucky statutes, Ky. R. S., 1948, §§ 297.140, 297.150, limit the beneficiary's liability to creditors of the deceased insured to the amount of the premiums paid by the insured in fraud of creditors, and consequently there was no liability since there was no evidence that Dr. Stern paid any premium in fraud of his creditors. Without intimating any view as to the correctness of the first holding of the Court of Appeals we find it unnecessary to decide whether the respondent was a transferee within the mean-

---

assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

.            .            .            .            .

"(f) DEFINITION OF 'TRANSFEREE'.—As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee." 53 Stat. 90, 91.

ing of § 311 [2] because we hold that the Kentucky statutes govern the question of the beneficiary's liability and create no liability of the respondent to the Government in the circumstances of this case.

*First.* Section 311 (a) provides that "The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax . . . imposed upon the taxpayer by this chapter" shall be "assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter . . . ." The decisions of the Court of Appeals and the Tax Court have been in conflict on the question whether the substantive liability enforced under § 311 is to be determined by state or federal law. Compare, *e. g., Rowen* v. *Commissioner,* 215 F. 2d 641, and *Botz* v. *Helvering,* 134 F. 2d 538, with *United States* v. *Bess,* 243 F. 2d 675, and *Stoumen* v. *Commissioner,* 27 T. C. 1014. This Court has expressly left the question open. *Phillips* v. *Commissioner,* 283 U. S. 589, 602.

The courts have repeatedly recognized that § 311 neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes. *Phillips* v. *Commissioner, supra; Hatch* v. *Morosco Holding Co.,* 50 F. 2d 138; *Liquidators of Exchange National Bank* v. *United States,* 65 F. 2d 316; *Harwood* v. *Eaton,* 68 F. 2d 12; *Weil* v.

---

[2] The Court of Appeals in this case followed its own prior decision in *Tyson* v. *Commissioner,* 212 F. 2d 16, in holding that Mrs. Stern as beneficiary was not a "transferee" of any part of the proceeds within the meaning of § 311. Other Courts of Appeals have held that the beneficiary is a transferee only to the extent of the cash surrender value existing at the time of the insured's death. *Rowen* v. *Commissioner,* 215 F. 2d 641; *United States* v. *Bess,* 243 F. 2d 675. The Tax Court, on the other hand, has held that the beneficiary is the transferee of the entire proceeds. *Stoumen* v. *Commissioner,* 27 T. C. 1014.

*Commissioner,* 91 F. 2d 944; *Tooley* v. *Commissioner,* 121 F. 2d 350.[3] Prior to the enactment of § 280 of the Revenue Act of 1926, 44 Stat. 9, 61, the predecessor of § 311, the rights of the Government as creditor, enforceable only by bringing a bill in equity or an action at law, depended upon state statutes or legal theories developed by the courts for the protection of private creditors, as in cases where the debtor had transferred his property to another. *Phillips* v. *Commissioner, supra,* at 592, n. 2; cf. *Pierce* v. *United States,* 255 U. S. 398; *Hospes* v. *Northwestern Mfg. & Car Co.,* 48 Minn. 174, 50 N. W. 1117. This procedure proved unduly cumbersome, however, in comparison with the summary administrative remedy allowed against the taxpayer himself, Rev. Stat. § 3187, as amended by the Revenue Act of 1924, 43 Stat. 343. The predecessor section of § 311 was designed "to provide for the enforcement of such liability to the Government by the procedure provided in the act for the enforcement of tax deficiencies." S. Rep. No. 52, 69th Cong., 1st Sess. 30. "Without in any way changing the extent of such liability of the transferee under existing law, . . . [this section] enforces such liability . . . in the same manner as liability for a tax deficiency is enforced; that is, notice by the commissioner to the transferee and opportunity either to pay and sue for refund or else to proceed before the Board of Tax Appeals, with review by the courts. Such a proceeding is in lieu of the present equity

[3] The Government argues that since § 311 and § 900 were originally enacted as correlative provisions of the Revenue Act of 1926 a substantive liability is imposed upon the beneficiary for both unpaid income and estate taxes of the decedent. But the 1939 Code "contains no provision in respect to income tax collection comparable to Section 827 (b) of the Code which expressly imposes liability for the estate tax on a 'beneficiary, who receives . . . property included in the gross estate under section [811 (f)].'" *Rowen* v. *Commissioner,* 215 F. 2d 641, 646.

proceeding . . . ." H. R. Conf. Rep. No. 356, 69th Cong., 1st Sess. 43–44. Therefore, since § 311 is purely a procedural statute we must look to other sources for definition of the substantive liability. Since no federal statute defines such liability, we are left with a choice between federal decisional law and state law for its definition.

*Second.* The Government urges that, to further "uniformity of liability," we reject the applicability of Kentucky law in favor of having the federal courts fashion governing rules. Cf. *Clearfield Trust Co.* v. *United States,* 318 U. S. 363. But a federal decisional law in this field displacing state statutes as determinative of liability would be a sharp break with the past. Federal courts, in cases where the Government seeks to collect unpaid taxes from persons other than the defaulting taxpayer, have applied state statutes, *Hutton* v. *Commissioner,* 59 F. 2d 66; *Weil* v. *Commissioner, supra; United States* v. *Goldblatt,* 128 F. 2d 576; *Botz* v. *Helvering, supra,* and the Government itself has urged reliance upon such statutes in similar cases, G. C. M. 2514, VI–2 Cum. Bull. 99; G. C. M. 3491, VII–1 Cum. Bull. 147. The Congress was aware of the use of state statutes when the enactment of the predecessor section to § 311 was under consideration, for the Congress in disclaiming any intention "to define or change existing liability," S. Rep. No. 52, 69th Cong., 1st Sess. 30, identified "existing liability" as liability ensuing "[b]y reason of the trust fund doctrine and various State statutory provisions . . . ." H. R. Conf. Rep. No. 356, *supra,* at 43.

It is true that, in addition to reliance upon state statutes, the Government invoked principles judicially developed for the protection of private creditors, in cases where the debtor had transferred his property to another and been left insolvent. Cf. *Pierce* v. *United States, supra; Hospes* v. *Northwestern Mfg. & Car Co., supra.* In such cases the federal courts applied a "general law"

which did not distinguish between federal and state decisional law. But the fact remains that the varying definitions of liability under state statutes resulted in an absence of uniformity of liability. Yet Congress, with knowledge that this was "existing law" at the time the predecessor section to § 311 was enacted, has refrained from disturbing the prevailing practice. Uniformity is not always the federal policy. Under § 70 of the Bankruptcy Act, for instance, state law is applied to determine what property of the bankrupt has been transferred in fraud of creditors. 30 Stat. 565, as amended, 11 U. S. C. § 110. What is a good transfer in one jurisdiction might not be so in another.

Since Congress has not manifested a desire for uniformity of liability, we think that the creation of a federal decisional law would be inappropriate in these cases. In diversity cases, the federal courts must now apply state decisional law in defining state-created rights, obligations, and liabilities. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. They would, of course, do so in diversity actions brought by private creditors. Since the federal courts no longer formulate a body of federal decisional law for the larger field of creditors' rights in diversity cases, any such effort for the small field of actions by the Government as a creditor would be necessarily episodic. That effort is plainly not justified when there exists a flexible body of pertinent state law continuously being adapted to changing circumstances affecting all creditors. Accordingly we hold that, until Congress speaks to the contrary, the existence and extent of liability should be determined by state law.

*Third.* The Court of Appeals held in this case that under the applicable Kentucky law the beneficiary of a life insurance policy is not liable to the insured's creditors, at least where, as here, the premiums have not been paid

in fraud of creditors, Ky. R. S., 1948, §§ 297.140, 297.150,[4] and that therefore no liability of the respondent exists under state law to any creditor, including the Government. The parties do not contest this construction of local law.

---

[4] Kentucky Revised Statutes provided:

"297.140 *Life insurance for benefit of a married woman; premiums paid in fraud of creditors.* (1) A policy of insurance on the life of any person expressed to be for the benefit of, or duly assigned, transferred or made payable to, any married woman, or to any person in trust for her, or for her benefit, by whomsoever such transfer may be made, shall inure to her separate use and benefit and that of her children, independently of her husband or his creditors or any other person effecting or transferring the policy or his creditors.

"(2) A married woman may, without consent of her husband, contract, pay for, take out and hold a policy of insurance upon the life or health of her husband or children, or against loss by his or their disablement by accident. The premiums paid on the policy shall be held to have been her separate estate, and the policy shall inure to her separate use and benefit and that of her children, free from any claim of her husband or others.

"(3) If the premium on any policy mentioned in this section is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of the creditors, subject to the statute of limitations.

"297.150 *Life insurance for benefit of another; premiums paid in fraud of creditors.* (1) When a policy of insurance is effected by any person on his own life or on another life in favor of some person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than the person effecting the insurance or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same.

"(2) Subject to the statute of limitations, the amount of any premiums for such insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company received written notice by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors."

The Government, however, argues in its brief, "Just as in the situation where a tax lien has attached it is held that state law may not destroy that lien, so here, where a tax liability is imposed by Congress, the state may not provide exemptions." We agree that state law may not destroy a tax lien which has attached in the insured's lifetime. We held today in *United States* v. *Bess, post,* p. 51, that a New Jersey statute, similar to the Kentucky statutes, could not defeat the attachment in the insured's lifetime of a federal tax lien under § 3670 against the cash surrender value of the policy, or prevent enforcement of the lien out of the proceeds received by the beneficiary on the insured's death. We might also agree that a State may not provide exemptions from a tax liability imposed by Congress. The fallacy in the Government's argument is in the premise that Congress has imposed a tax liability against the beneficiary. We have concluded that Congress has not seen fit to define that liability and that none exists except such as is imposed by state law. Thus there is no problem here of giving effect to state exemption provisions when federal law imposes such liability. The Government's substantive rights in this case are precisely those which other creditors would have under Kentucky law. The respondent is not liable to the Government because Kentucky law imposes no liability against respondent in favor of Dr. Stern's other creditors.

*Affirmed.*

MR. JUSTICE BLACK, whom THE CHIEF JUSTICE and MR. JUSTICE WHITTAKER join, dissenting.

We are concerned here with a suit against the United States to determine the liability of a party for federal income taxes. In my judgment it is a mistake to look to state law to decide that liability. The laws of the several States are bound to vary widely with respect to the

responsibility of transferees for the obligations of their transferors. Therefore application of state law leads to the anomalous result that transferees will be liable for federal taxes in one State but not in another even though they stand in precisely the same position. I believe that such uneven application of what this Court has characterized as "a nationwide scheme of taxation," *Burnet* v. *Harmel*, 287 U. S. 103, 110, is thoroughly unwise and is not required by the Constitution, by Act of Congress, or by any compelling practical considerations.

In my view, liability for federal taxes should be determined by uniform principles of federal law, in the absence of the plainest congressional mandate to the contrary.* Where as here Congress has provided no standards which define the liability of a transferee for the taxes of his transferor the federal courts themselves should fashion a uniform body of controlling rules which fairly implement the collection of government revenues. Cf. *Clearfield Trust Co.* v. *United States,* 318 U. S. 363; *United States* v. *Standard Rice Co.,* 323 U. S. 106; *United States* v. *Standard Oil Co.,* 332 U. S. 301; *Priebe & Sons, Inc.,* v. *United States,* 332 U. S. 407; *Textile Workers Union of America* v. *Lincoln Mills of Alabama,* 353 U. S. 448. It can hardly be denied that uniformity in the imposition

---

*"[A]s we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law." *United States* v. *Pelzer,* 312 U. S. 399, 402–403.

Of course state law must be consulted to determine what property rights and interests a taxpayer actually has. But once these rights and interests are thus established, their consequence for purposes of federal taxation is a matter of federal law. *Watson* v. *Commissioner,* 345 U. S. 544; *Morgan* v. *Commissioner,* 309 U. S. 78; *Burnet* v. *Harmel,* 287 U. S. 103.

and collection of federal taxes has always been regarded as extremely desirable in this country. Indeed those who framed the Constitution deemed it so important that they expressly required that "all Duties, Imposts and Excises [levied by Congress] shall be uniform throughout the United States." Art. I, § 8. Cf. Art. I, §§ 2, 9. Taxpayers should be treated equally without regard to the fortuity of residence; and the additional complication and inconvenience in the administration of an already complex federal tax system which is certain to follow an attempt to apply the differing laws of 48 States to transferee liability ought to be avoided, if at all possible.

Here, Congress has never directed that the tax liability of a transferee be determined by state law. The legislative history of § 280 of the Revenue Act of 1926 certainly falls far short of a congressional mandate to that effect. Prior to that Act the federal courts had applied general principles of equity to determine the liability of transferees for federal taxes, without regard to state law, except for a few instances where state statutes apparently were more favorable to the Commissioner. Both Senate and House Committees emphasized that § 280 was simply a procedural provision not affecting the substantive liability of a transferee as it had been previously developed by the federal courts. S. Rep. No. 52, 69th Cong., 1st Sess. 30; H. R. Conf. Rep. No. 356, 69th Cong., 1st Sess. 43–44. And the House Conference Committee went on to express the hope that the newly created Board of Tax Appeals would gradually fashion a uniform body of principles to govern transferee liability. H. R. Conf. Rep. No. 356, *supra,* at 44. All this is hardly consistent with the notion that state law was to be decisive; if anything, it indicates precisely the contrary. It might be added that the Tax Court, measuring up to the expectations of the House Committee, has persistently endeavored to develop consistent standards to determine transferee lia-

bility despite the opposition of several Courts of Appeals. See, *e. g., Muller* v. *Commissioner,* 10 T. C. 678; *Leary* v. *Commissioner,* 18 T. C. 139; *Bales* v. *Commissioner,* 22 T. C. 355; *Stoumen* v. *Commissioner,* 27 T. C. 1014.

I would hold, as a matter of federal law, that where a transferee receives property from a taxpayer who is left with insufficient assets to pay his federal taxes the transferee is liable for those taxes to the extent he has not given fair consideration for the property received. This has been the rule applied by those courts which have heretofore determined transferee liability on the basis of federal law. See, *e. g., Pearlman* v. *Commissioner,* 153 F. 2d 560; *Updike* v. *United States,* 8 F. 2d 913; *Stoumen* v. *Commissioner,* 27 T. C. 1014. Such a rule has long-standing antecedents in the federal courts which may be traced back, in part, at least as far as the noted decision by Justice Story in *Wood* v. *Drummer,* 30 Fed. Cas. 435. It would operate to prevent tax evasion, and yet not impose an unfair burden on transferees.

Turning to the present case, I agree with the Court in *United States* v. *Bess, post,* p. 51, that the cash surrender values of insurance policies, but not the proceeds, are property of the insured for purposes of the federal tax laws which pass to the beneficiary of the policy upon the insured's death. Here it appears that the insured had insufficient assets at the time of his death to satisfy his unpaid income taxes. Therefore I would hold the beneficiary of his policies, Mrs. Stern, responsible for the unpaid taxes to the extent of the cash surrender value of those policies just before he died.