261 F.2d 172
 Mary STOUMEN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Kenneth STOUMEN, Transferee, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Lois Stoumen DEUTSCH, Transferee, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Eileen STOUMEN, Transferee, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 12500-12503.
 United States Court of Appeals Third Circuit.
 Argued November 3, 1958.
 Decided November 24, 1958.
 
 Llewellyn A. Luce, Washington, D. C., for petitioners.
 Kenneth E. Levin, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.
 Before MARIS, GOODRICH and KALODNER, Circuit Judges.
 MARIS, Circuit Judge.
 
 
 1
 These are petitions to review decisions of the Tax Court holding Mary Stoumen, Kenneth Stoumen, Lois Stoumen Deutsch and Eileen Stoumen, the widow and children, respectively, of Abraham L. Stoumen, deceased, liable as transferees for Abraham's unpaid income tax, additions to tax, and interest thereon, for the years 1943, 1944 and 1945, to the extent of the proceeds of insurance policies on the life of Abraham paid to them as the designated beneficiaries.[1] The insurance proceeds thus received by Mary amounted to $83,775.00, by Kenneth $9,991.90, by Lois $10,018.10 and by Eileen $9,991.90, a total of $113,776.90. In addition, the Tax Court decided that Mary, who was the executrix of Abraham's estate, was also liable as transferee to the extent of $77,950.00 which she had received and deposited as executrix but had later withdrawn and deposited in her personal bank account. Mary concedes in this court that the decision of the Tax Court was correct as to this item of $77,950.00.
 
 
 2
 With respect to the insurance proceeds the Tax Court's decisions were based upon its holding, in line with its prior decisions, that the proceeds of the insurance policies on the life of Abraham were his property, within the meaning of section 311(a)(1) of the Internal Revenue Code of 1939,[2] since he had retained until his death the right to change the beneficiaries of the policies, and that under the applicable rules of federal law the beneficiaries were liable as transferees, to the extent of the insurance proceeds which they had received, for Abraham's unpaid income tax liability. 27 T.C. 1014.
 
 
 3
 The petitioners urge in this court that the Tax Court's holding in this regard was erroneous in the light of the subsequent decision of the Supreme Court in Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126. In the Stern case the Court held that section 311 neither creates nor defines a substantive liability but merely provides a new procedure by which the Government may collect taxes, that the existence and extent of the liability of a transferee is to be determined by state law rather than by federal decisional law, and that the Government's substantive rights against a transferee are precisely those which other creditors would have under the applicable state law. The statute of Pennsylvania,[3] where the insured was domiciled and the beneficiaries resided and where Abraham's estate is being administered, has been held to provide that the net amount payable under a policy of life insurance to the wife or children of the insured as beneficiaries shall inure to their benefit, free from claims of creditors of the insured, whether he was solvent or insolvent and whether or not he had reserved the right to change the beneficiary. Potter Title & Trust Co. v. Fidelity Trust Co., 1934, 316 Pa. 316, 175 A. 400; In re Kenin's Trust Estate, 1942, 343 Pa. 549, 559-561, 23 A.2d 837, 843. The Government concedes that this is the law of Pennsylvania and admits that under the rule of the Stern case the Pennsylvania law is applicable to defeat its transferee claims against the children and all but $60,000 of that portion of its transferee claim against the widow which is based upon the receipt of insurance proceeds.
 
 
 4
 The Government urges that there is an exception to the general Pennsylvania rule, however, under which it is entitled to charge the widow with transferee liability as to the proceeds of four insurance policies amounting to $60,000 which she received, and it seeks an opportunity at another hearing in the Tax Court to prove facts which, it asserts, would establish its right in this regard. The Government's contention is that it has been held in Pennsylvania that when an insured makes a transfer of an insurance policy to a wife or child for the purpose of defrauding his creditors the statute exempting such life insurance proceeds from the claims of his creditors does not apply and that the provisions of section 7 of the Pennsylvania Uniform Fraudulent Conveyance Act[4] become applicable instead. We need not decide whether there is such an exception to the general rule in Pennsylvania, however. Nor need we determine whether we would have power to remand the case to the Tax Court in order to give the Government another opportunity to prove the facts necessary to bring the case within the suggested exception. For we must reject the Government's contention since the facts disclosed in the present record clearly negative the possibility of the Government succeeding in such an endeavor.
 
 
 5
 The background facts of this case are set out in detail in Estate of Abraham L. Stoumen, Deceased, Mary Stoumen, Executrix v. Commissioner, 1953, 12 T.C.M. 1399, and Stoumen v. Commissioner of Internal Revenue, 3 Cir., 1953, 208 F.2d 903. No useful purpose would be served in repeating them here. It is sufficient to state merely the following pertinent facts: Under a partnership agreement dated January 2, 1943, between Abraham L. Stoumen and his brother, Bernard Stoumen, it was provided:
 
 
 6
 "14. Upon the death of either party, the survivor agrees to purchase the decedent's interest in the firm * * *.
 
 
 7
 "15. To provide funds to enable the survivor to purchase the interest in said firm of his deceased partner, as provided in paragraph 14 hereof, the parties have had the following specified policies of insurance on their respective lives made payable to each other as sole beneficiary thereunder, viz:
 
 
 8
 "On the Life of Bernard Stoumen
 
 
 9
 * * * * * *
 
 
 10
 "On the Life of Abraham L. Stoumen
 
 
 11
 [Here followed a list of the policies in controversy]
 
 
 12
 * * * * * *
 
 
 13
 "The premiums on all of the said policies shall be paid out of the firm's profits or capital (as the parties may agree) * * *. Each party agrees not to borrow on said policies or to change the beneficiary therein without the written consent of the other party. The proceeds of said policies * * * are for the express purpose of enabling the survivor to purchase decedent's interest in said firm as above set forth and shall not be used for any other purpose, and the survivor is to be deemed as trustee thereof for said purpose for the decedent's estate * * *."
 
 
 14
 The four policies which the Government questions here, $60,000 in face amount, were those specified in the agreement on the life of Abraham. Bernard was the sole beneficiary thereunder as agreed.
 
 
 15
 On March 23, 1946, about six weeks before Abraham died by his own hand, he applied to the insurance company to change the beneficiary on each policy to his wife Mary. The change was made on March 29, 1946 and after his death Mary, rather than Bernard as trustee for his estate, received the sum of $60,000 as the proceeds of the policies. The Government's contention is that this change of beneficiary was a fraudulent transfer which was void under the Pennsylvania Uniform Fraudulent Conveyance Act because it was made in violation of Abraham's agreement with his brother Bernard and at a time when he was insolvent. Since the Government offered no evidence in the Tax Court as to Abraham's insolvency on March 23, 1946 it seeks a remand to enable it to do so at another hearing.
 
 
 16
 The difficulty with the Government's contention is that it is based upon the theory that the policies in question were assets belonging to Abraham and available to his creditors which he wrongfully transferred to his wife, whereas the facts in the record do not support this proposition. For the policies were contractually devoted to the sole purpose of providing a ready fund with which Bernard might meet in part his obligation to purchase and pay for Abraham's interest in their partnership in case the latter should pre-decease him.[5] Absent the fund thus provided by the policies Bernard nonetheless remained obligated to pay Abraham's estate the value of his partnership interest. Accordingly Abraham's creditors could hardly be prejudiced by reason of the change of beneficiary under the policies from Bernard to Mary unless Bernard was shown to have been insolvent. His insolvency at that time is, however, not even suggested by the Government.
 
 
 17
 Moreover the proceeds of the policies in question were not in fact received by Mary in fraud of Bernard's rights under the agreement of January 2, 1943. For the record discloses that a supplemental written agreement between Bernard and Abraham dated May 4, 1946 provided:
 
 
 18
 "Supplementing but not voiding agreement between Bernard Stoumen and Abraham L. Stoumen, dated January 2d, 1943, since a change of beneficiaries has been made in the policies mentioned in this agreement, the conditions as to the disposition of the proceeds in the event of death are not to be effective as provided, and all provisions pertaining to insurance are hereby voided."
 
 
 19
 Under these circumstances it is clear that Abraham's widow, Mary, as beneficiary, is entitled under the Pennsylvania statute to retain the proceeds of the insurance policies in question free of the Government's claim as a creditor of her husband.
 
 
 20
 It was stipulated that Bernard was obligated to Abraham's estate in the amount of $222,002.50 as of May 7, 1946, the date of his death. 27 T.C. 1014, 1017. Between that date and June 17, 1949, Bernard, pursuant to the agreement and supplemental agreement, paid Mary, as executrix, sums totaling $77,950.00 in partial liquidation of his obligation to purchase Abraham's interest in the partnership. This is the fund which Mary now concedes belongs to Abraham's estate and for which she admits her liability as transferee. To the extent of this fund the decision of the Tax Court in her case was right but it erred in not restricting her liability as transferee to that amount.
 
 
 21
 The decisions of the Tax Court in Nos. 12,501, 12,502 and 12,503 will be reversed. In No. 12,500 the decision will be vacated and the cause will be remanded to the Tax Court for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The deficiencies upon which these transferee assessments were made were not determined against Abraham in his life-time but against his estate after his death. In this respect this case differs from United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135
 
 
 [2]
 "§ 311. Transferred assets
 "(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):
 "(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter." 26 U.S.C.A. § 311.
 
 
 [3]
 Act of June 28, 1923, P.L.(Pa.) 884, 40 P.S.(Pa.) § 517
 
 
 [4]
 Act of May 21, 1921, P.L.(Pa.) 1045, § 7, 39 P.S.(Pa.) § 357
 
 
 [5]
 Without Bernard's consent under their agreement Abraham was not free to divert them to any other beneficiary or purpose