**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No.  97-1404

_____

United States of America,          *
                                   *
          Plaintiff-Appellee,      *  Appeal from the United States
                                   *  District Court for the
     v.                            *  District of South Dakota.
                                   *
First Dakota National Bank,        *
                                   *
          Defendant-Appellant.     *
                                   *


_____

Submitted: October 23, 1997
              Filed:  March 6, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

     First Dakota National Bank (First Dakota) appeals the district court's[1] grant of judgment as a matter of law in favor of the United States in this action to collect interest due on a past tax liability of American State Bank (American State), whose assets and liabilities First Dakota purchased in 1988 when American State went under.  First Dakota argues that the district court erred in granting the government judgment

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

as a matter of law, because American State's failure to disclose a pending Internal Revenue Service (IRS) audit was material to First Dakota's decision to purchase American State's assets.

The United States filed the complaint in this case against First Dakota, seeking to recover unpaid interest due to the IRS in the amount of $37,574.67. This interest liability arose from a tax deficiency in the 1981 consolidated corporate income tax return of American State and American Banshares, Inc., the holding company that owned over 96% of American State's stock. The IRS discovered the tax deficiency in 1988 while conducting an audit of American State. Early in the investigation, the IRS agent involved in the audit, Doug Uthe, told American State's president that it was likely American State would receive a refund of approximately $25,000 due to its substantial net operating losses. After further investigation, however, the IRS audit revealed the tax deficiency from 1981, on which interest had accrued. This "restricted interest" had accrued during the period from 1981 until the time when the 1981 tax deficiency was eliminated by a carry-back of American State's subsequent net operating losses. Ultimately, in 1990, the IRS assessed the interest in the amount of $37,574.67. The correctness of the amount is not disputed in this appeal.

In 1988, prior to the assessment of the interest at issue here, and with the aid of an assistance agreement with the FDIC, First Dakota purchased the assets and assumed all the liabilities of American State with knowledge that American State's liabilities exceeded its assets. First Dakota contends that the IRS audit was not disclosed at the time it was negotiating the purchase agreement, and that its knowledge of the audit would have altered its negotiation position. The government assessed American State's interest liability as indicated above in 1990, subsequent to First Dakota's closing on the bank purchase agreement and its acquisition of American State assets and liabilities.

The government brought this action to recover the interest from First Dakota, the new owner of American State's assets. As affirmative defenses to this action, First

Dakota asserted that the government's claim is barred by provisions of both the FDIC assistance agreement and the contractual purchase agreement, wherein American State warranted that it had filed all tax returns, that each was complete and accurate in all material respects, and that there was no investigation or proceeding pending or threatened against American State before any governmental agency at the time of the purchase.[2]  First Dakota asserted that American State breached its contractual warranties by not disclosing the audit when the purchase transaction was pending.

First Dakota demanded a jury trial.  The district court concluded as a matter of law that American State had filed complete and accurate tax returns as it had warranted it had done in the purchase agreement and that First Dakota had agreed to assume the liability.  The only issue sent to the jury as an affirmative defense was the question of whether knowledge of the IRS audit would have been material to First Dakota in the purchase transaction.  The jury found in favor of First Dakota.  Following the verdict, however, the district court granted the government's renewed motion for judgment as a matter of law.

The district court concluded as a matter of law that First Dakota failed to prove it had no knowledge of the audit or that knowledge of the audit would have been a material consideration in this transaction.  In reaching this conclusion, the district court considered that the audit was in progress but had not been completed at the time of the transaction, that First Dakota had assumed far riskier liabilities than the interest liability that resulted from the audit, and that at the time of the purchase transaction, the testimony indicated everyone involved, including the IRS agent performing the audit, thought that American State would be entitled to a refund due to its large losses.  Thus, the district court concluded that the evidence was not sufficient for the jury to find that

---

[2]First Dakota also raised affirmative defenses based on the statute of limitations and failure to state a claim, neither of which is at issue in this appeal.

knowledge of the audit would have materially altered the transaction.  First Dakota appeals.

We  review de novo the district court's grant of judgment as a matter of law, applying the same standards as the district court.  Triton  Corp. v. Hardrives, Inc., 85 F.3d 343, 345 (8th Cir.1996).  We must resolve all conflicts in favor of the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. Id.  "We will not weigh, evaluate, or consider the credibility of the evidence."  Id.

The IRS may collect tax liabilities from the transferee of property transferred by a taxpayer.  See 26 U.S.C. § 6901(a) (1994).  This is a procedural statute which does not create or define substantive liability. Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 42 (1958).  Therefore, the existence and extent of liability of a transferee of property of a taxpayer is determined by state law.  Id. at 44.  We apply de novo review to the district court's interpretation of state law.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

First Dakota's defense theory, upon which the case was tried, was that it could defend against the government's claim on the basis that American State and the FDIC had failed to disclose the potential interest liability at the time First Dakota negotiated the purchase of American State.  Generally, under South Dakota law, there is no successor liability for a purchasing corporation when the acquisition takes the form of a purchase of assets.  Groseth Intern., Inc. v. Tenneco, Inc., 410 N.W.2d 159, 169  (S.D. 1987).  Four exceptions exist to this general rule, including among them that a purchasing corporation is liable for the debt of the selling corporation "[w]hen the purchasing corporation expressly or impliedly agrees to assume the selling corporation's liability." Id.  In this case, First Dakota expressly agreed that, on the closing date, it would assume and pay "the deposit and all other liabilities and obligations of Seller [American State] as such liabilities and obligations may then exist." (Purchase Agreement at ¶ 2.)  In spite of this express assumption of liability, First Dakota

attempts to avoid liability by asserting that American State breached the purchase agreement and the FDIC assistance agreement by breaching its warranties that it had paid all taxes and that no government agency litigation was pending or threatened at the time of the agreement.

General case law from South Dakota indicates that "a material breach of one aspect of the contract constitutes a material breach of the whole contract." Talley v. Talley, 566 N.W.2d 846, 851 (S.D. 1997). While "[r]escission is not generally permitted for casual, technical, or unimportant breaches of the contract," it may be allowed where the breach is "substantial and relate[s] to a material part of the contract." Id. at 852 (internal quotations omitted). Under this authority, a breach of a warranty could be a valid affirmative defense if the alleged breach of warranty is substantial and relates to a material part of the contract.

The jury determined (1) that First Dakota did not know of the IRS audit at the time of closing on the purchase agreement because American State failed to disclose the audit; and (2) that the failure to disclose was material to First Dakota's agreement to assume all liabilities of American State. However, we agree with the district court's determination that the failure to disclose the audit, as a matter of law, was not material to First Dakota's agreement to purchase American State's assets and assume its liabilities.

The interpretation of a contract is a question of law for the court. Houser v. Houser, 535 N.W.2d 882, 884 (S.D. 1995). The contract clearly indicates an intention to assume all liabilities, known or unknown, by unqualifiedly stating that First Dakota assumes "all other liabilities and obligations of Seller [American State] as such liabilities and obligations may then exist." (Purchase Agreement at ¶ 2.). The agreement does not indicate an intention to limit First Dakota's liability to only those liabilities known at the time of the agreement. In this case, the known liabilities at the time of the agreement exceeded the $65 million in assets to be transferred. In this

context, an additional interest liability of slightly over $37,000 could not have materially altered the transaction. Further, while the extent of the tax liability was not known at the time of closing, the evidence is uncontradicted that all who knew of the pending IRS audit generally expected it to result in a tax refund, not a liability. American State's president had been informed by the auditor to expect a refund in the neighborhood of $25,000. Disclosing this known information to First Dakota would not have materially altered the negotiations. The facts simply are insufficient to support a finding that knowledge of the tax audit would have been material to the purchase agreement.

We have considered all of First Dakota's arguments and find them to be without merit. We conclude that the district court committed no error of fact or law. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.