EILEEN BORG, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borg v. Commissioner
Docket No. 217-81.
United States Tax Court
T.C. Memo 1987-596; 1987 Tax Ct. Memo LEXIS 595; 54 T.C.M. (CCH) 1243; T.C.M. (RIA) 87596; December 3, 1987. *595 From 1967 to 1978, petitioner advanced to her son and his wholly owned corporation sums of money which were used in part to purchase business real property. Petitioner hoped to be repaid according to her so's ability to do so. Prior to receiving a notice of termination assessment, petitioner's son and his corporation conveyed property to petitioner purportedly as repayment. Held, petitioner is liable as a transferee to the extent of the net equity in the property transferred by her son individually to petitioner. Held further, petitioner is not liable as transferee for property transferred by her son's wholly owned corporation. Held further, accrual of interest determined. Jerome S. Richman, for the petitioner. Magda Abdo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated December 4, 1980, respondent determined liability against petitioner, as transferee of her son Steven L. Ruth (Ruth), for deficiencies in the latter's Federal income taxes in the amount of $ 450,241.19. [1] Respondent also determined that petitioner's transferee liability was limited to $ 412,464, which was the value of certain assets received by *596 her. Ruth's liabilities for tax and additions to tax are as follows: Additions to Tax
Section
Section
Section
Year
Amount
6651(a)(1) [2]
6653(a)
6654
1976
$  25,401
$  6,350
$  1,270
$   948
1977
138,401
34,600
6,920
4,930
1978
103,453
--
5,173
--
1979
146,901
--
--
--
TOTAL
$ 414,156
$ 40,950
$ 13,363
$ 5,878
The issues for decision are: (1) Whether petitioner is liable under section 6901 as Ruth's transferee in respect of certain parcels of real property conveyed on March 28, 1979; (2) Whether the transfer of a parcel of real property by Captains Club International, Inc. (CCI) constitutes a transfer by Ruth for purposes of section 6901; and (3) the date from which any interest will be assessed against petitioner. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by this reference. At the time she filed her petition, *597 petitioner resided at 135 East Seminole Drive, Venice, Florida. On March 25, 1980, a notice of termination assessment was issued to Ruth for the year 1979 in the amount of $ 269,775. This amount was reduced to $ 146,901 by notice dated May 22, 1980. On October 7, 1980, a notice of jeopardy assessment was issued to Ruth for the years 1976 through 1978. A notice of transferee jeopardy assessment for the amounts determined against Ruth for his 1976 through 1979 years was issued to petitioner on that same date. On December 4, 1980, a statutory notice of deficiency was issued to Ruth for the years 1976 through 1978. On December 17, 1980, a statutory notice of deficiency was issued to Ruth for 1979. On May 19, 1985, decisions were entered in this Court establishing Ruth's liability for Federal income tax and additions to tax as follows: Additions to Tax
Section
Section
Section
Year
Tax
6651(a)(1)
6653(a)
6654
1976
$  22,152.00
$  5,538
$ 1,108
$   824
1977
96,451.00
24,113
4,823
3,432
1978
29,555.75
--
1,478
--
1979
10,466.00
--
523
--
TOTAL
$ 158,624.75
$ 29,651
$ 7,932
$ 4,256
Ruth's outstanding tax liability was later reduced by $ 32,702 upon the seizure and October 28, 1982, sale of his 32-foot Excalibur boat. *598 From March 23, 1977, until January 2, 1979, Ruth was involved in the purchase of several parcels of real property in Sarasota, Chadwick, and Charlotte Counties, Florida. Among these parcels were: Date
Parcel
Purchase Price
3/23/77
Lot 827, Englewood Gardens
$  64,000
Unit #4 (lot 827)
4/8/77
Lot 828, Englewood Gardens
35,000
Unit #4 (lot 828)
11/14/77
Lot 792, Englewood Gardens
15,000
Unit #3 (lot 792)
3/1/78
All or part of each of Lots 10-13,
218,000
block 9, in Charlotte County,
Florida (CCI property)
3/29/78
Lot 25, Block 9, Chadwich Beach
20,000
Charlotte County, Florida
(Chadwich Beach property)
1/2/79
Lots 12-18, Block 9, Chadwich
200,000
Subdivision, Charlotte County,
Florida (Leisure Inn property)
The CCI and Chadwick Beach properties were purchases subject to outstanding mortgages in the amounts of $ 123,000 and $ 6,948, respectively. Ruth purchased the Leisure Inn property utilizing a purchase money mortgage of $ 145,000. Lots 827, 828, and 792, which were unencumbered, were titled in the names of Stephen L. Ruth and Eileen Borg, as joint tenants with right of survivorship, although Ruth furnished the entire consideration for their purchase. Ruth's involvement with the purchase of the CCI property *599 was in his capacity as sole shareholder of CCI, which operated a restaurant and employed approximately 45 persons, including a full-time manager. Ruth ate sole meals at CCI and had CCI employees run some personal errands for him. Although CCI lost money, it operated for more than 1 year until the property was transferred by quitclaim deed to petitioner on March 28, 1979. On that same date, Ruth transferred the Chadwick Beach and Leisure Inn properties by quitclaim deed to petitioner. Petitioner recorded all three deeds on April 11, 1980. Petitioner gave Ruth sums of money from time to time between 1967 and 1978. The sums given him during the first few years of this period were for his college education and were not intended to be repaid. Neither did petitioner intend to be repaid money sent to Ruth through the Swiss embassy while he was imprisoned in Cuba. Petitioner hoped that Ruth would repay the sums which she later gave him when he was able to do so although she would never have taken him to court seeking repayment. The only records of the sums forwarded to Ruth by petitioner were notations in petitioner's savings account passbook designating which withdrawals were advanced *600 to him. The notations did not designate these advances as loans, nor was any distinction in petitioner's passbook made between advances for which petitioner desired to be repaid and those for which she did not. [3] Ruth intended the transfer of the Chadwick Beach and Leisure Inn properties to petitioner to be in partial payment of these advancements. He also repaid approximately $ 3,000 shortly after the transfer of the two properties. Neither petitioner nor Ruth knew the exact amount petitioner had advanced to him, although the total was in excess of the net equity of the property transferred. Immediately before the transfer, Ruth owned assets and owed debts as follows: Fair Market
Encumbrances
Asset
Value
(including taxes)
Chadwick Beach
$  20,000
$   6,948.00
Leisure Inn
200,000
145,000.00
Lockheed N403T
65,896
--
Excalibur boat
32,702
--
50% interest
Lot 792
7,500
--
50% interest
Lot 827
32,500
--
50% interest
Lot 828
17,500
--
1976 taxes [4] *601 --
29,622.00
1977 taxes
--
128,819.00
1978 taxes
--
31,033.75
1979 taxes [5]
--
10,989.00
Total [6]
$ 375,598
$ 352,411.75 The transfer of the Chadwick Beach and Leisure Inn properties to petitioner reduced the fair market value of Ruth's assets to *602 $ 155,598, while the total of Ruth's liabilities, consisting solely of Federal income tax liability, was reduced to $ 200,463,75. Although the transfer left Ruth insolvent, he continues to express his desire to someday repay all his mother's advances. OPINION Section 6901 creates no liability in a transferee; rather it provides a procedural remedy whereby the Commissioner can collect from a transferee the unpaid taxes of the transferor. Adams v. Commissioner,70 T.C. 373, 389 (1978). The liability of the transferee is determined under state law, which in this case is the law of Florida. Commissioner v. Stern,357 U.S. 39 (1958). The primary issue in this case, as framed with reference to Fla. Stat. section 726.01[7] *603 *604 (1969) is whether the conveyance of property in satisfaction of a debt payable when able constitutes adequate consideration. The burden of proving otherwise rests with respondent. Sec. 6902. Petitioner concedes that the transferor, her son Steven L. Ruth, is liable for income taxes and additions to ax for the years 1976 through 1979. Petitioner's primary defense is that the conveyance of Ruth's interest in these parcels of real property to her was in satisfaction of an antecedent debt. Petitioner further claims that liability may not be imposed upon her under section 6901 since Ruth was not insolvent at the time of the transfer, nor was he rendered insolvent by the transfer. For respondent to prevail, he must show a transfer of property, section 6901(a)(1); the value of transferred assets, Stokes v. Commissioner,22 T.C. 415, 428 (1954); the accrual of the transferor's tax liability, although the amount need not be definitely known, Papineau v. Commissioner,28 T.C. 54, 58 (1957); insolvency of the transferer prior to or *605 because of the transfer, Swinks v. Commissioner,51 T.C. 13, 17 (1968); that all reasonable attempts to collect from the transferor have been made or are futile, [8]Sharp v. Commissioner,35 T.C. 1168, 1175 (1961); and that the transfer was for less than adequate consideration, Estate of Miller v. Commissioner,42 T.C. 593, 599 (1964). The parties agree that the first three elements are present: Ruth transferred the Chadwick Beach and Leisure Inn properties to petitioner on March 28, 1979, the net equities [9] of the parcels were $ 13,052 and $ 55,000, respectively, and that Ruth's tax liability for the years 1976 through 1979, as finally determined, including additions to tax, but not including any accrued interest, is $ 200,463,75. The *606 remaining issues to be resolved are whether Ruth was insolvent and whether the transfer from Ruth to petitioner was for adequate consideration. In determining whether a transferor is insolvent, we once again look to state law. See Swinks v. Commissioner,51 T.C. 13, 17 (1968). Florida law deems a person insolvent when he "has ceased to pay his debts in the ordinary course of business or cannot pay his debts and they become due or is insolvent within the meaning of the federal bankruptcy law." Fla. Stat. sec. 671.1-201(23) (1969). Under even a more restrictive bankruptcy test of insolvency, which involves a balances sheet analysis [10] without regard to liquidity of assets, Ruth was rendered insolvent by the transfer. His conveyance of the Chadwick Beach and Leisure Inn properties relieved him of the encumbrances upon the transferred properties while leaving him with certain items of personal property and joint tenancy interests in several parcels of real property. [11] *608 However, the fair market value of Ruth's remaining *607 properties [12] is less than his income tax liabilities; therefore we find that respondent has proven that Ruth was rendered insolvent by the transfer of the properties to petitioner. [13]
The final requirement is the adequacy of consideration. A transfer of adequate consideration leaves a transferor (and therefore his creditors) in the same position from a standpoint of solvency as before the exchange; such a transfer is therefore not fraudulent. Adequacy of consideration is also a question of State law. Cf. Commissioner v. Stern,357 U.S. 39 (1958). In Jones v. Wear,111 Fla. 69, 149 So. 345, 348 (1933), the Florida Supreme Court quoted Moore on Fraudulent Conveyances, Vol. 1, p. 3011 in *609 holding that an antecedent debt is sufficient consideration for a transfer of property which has the effect of defeating other of the transferor's creditors, unless it appears that [the debt] was not recognized or acknowledged as a legal indebtedness or obligation by the parties, until the grantor was threatened with financial troubles or became insolvent * * *. But the debt which constitutes the consideration must be an obligation for which the debtor is legally liable and which he could be compelled to pay by action. See also Kirk v. Edinger,380 So. 2d 1336 (Fla. Dist. Ct. App. 1980). We need not attempt to understand Ruth's motives in transferring the property to petitioner, since we find that there was no debt which Ruth could have been legally obligated to pay. Section 6902 places the burden or proof in transferee liability cases upon respondent to show that petitioner is liable as a transferee of property. Once respondent makes a prima facie case, the burden of going forward with the evidence, but not the burden or proof, shifts to petitioner. See Gatto v. Commissioner,20 T.C. 830, 834 (1953). Petitioner has failed to rebut respondent's showings of Ruth's insolvency and *610 respondent's showing that he exhausted all his collection methods. We also find that respondent has made a prima facie showing of a failure of consideration which petitioner has not rebutted. We therefore find for respondent to the extent of the value, less the outstanding encumbrances, of the Chadwick Beach and the Leisure Inn properties. The testimony of petitioner and Ruth does not convince us that any advance which petitioner might have made to Ruth created an unconditional obligation on Ruth to repay the sum on a date certain. [14] Petitioner testified that those advances which she made to Ruth while he was attending college were not expected to be repaid. Petitioner characterized money that she sent to Cuba for her son as "not exactly a loan but I hoped that he would pay me back." Neither petitioner nor Ruth knew how much petitioner had advanced to Ruth, and at one point petitioner testified that she kept an account (such as it was) of the amounts she advanced to Ruth only to show him how much she had spent on him since he left home. Petitioner testified that she would never have taken Ruth to court in order to have the loans repaid. Petitioner has failed to show what amount, *611 if any, of these advances constituted loans. Respondent having made a prima facie case against petitioner, the burden of going forward with the evidence falls upon her. She has failed in her attempt to sustain this burden. Respondent also contends that we should disregard CCI as a corporate entity and find that its transfer of the CCI property to petitioner was in reality a transfer by Ruth. However, *612 the doctrine of corporate entity, while not inviolate, is entitled to more deference than respondent would afford it. As the Supreme Court has said: Whether the purpose [of the corporate entity doctrine] be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * [Moline Properties, Inc. v. Commissioner,319 U.S. 436, 438-439 (1943). Fn. ref. omitted.] Once again, since the precise issue is not the validity of CCI for Federal income tax purposes, but whether there was a fraudulent conveyance, we look to state law. Respondent calls to our attention the fact that Ruth made personal use of some corporate assets, was the only corporate officer, [15] and made all major corporate decisions. Respondent concludes that the transfer of the CCI property at a time when CCI was losing money perpetrated a fraud upon Ruth's creditors, and on the creditors of CCI. [16] It is necessary to decide whether *613 or not the transfer was a fraud on the creditors of CCI, since CCI had no outstanding tax liability and we find it inappropriate to disregard it as a corporate entity. The Florida courts have held that to justify the piercing of the corporate veil: there should be a preliminary showing that the corporation is in actuality the alter ego of the stockholders and that it was organized after organization was employed by the stockholders *614 for fraudulent or misleading purposes, or in some fashion that corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not bona fidely established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders. [Advertects, Inc. v. Sawyer Industries,84 So. 2d 21, 24 (Fla. 1955).]
See also Dania Jai-Alai Palace, Inc. v. Sykes,450 So. 2d 1114 (Fla. 1984); Aztec Motel, Inc. v. State ex rel Faircloth,251 So. 2d 849 (Fla. 1971). The Florida courts have made clear that actual fraud need not be shown, but at the very least, a showing of improper conduct is required. Dania Jai-Alai Palace, Inc. v. Sykes,supra at 1121. While respondent has shown that Ruth took advantage of his position as sole officer and shareholder of CCI, we do not find that his behavior as regards the corporation rises to that level of improper conduct contemplated by the Florida courts. The CCI property was purchased in March 1978 in the name of CCI, and although petitioner was not sure whether the money was disbursed went to Ruth or CCI, the purpose to which the money *615 was to be put is clear: to purchase the CCI property. Further, CCI was clearly not a sham corporation. Although it lost money, it carried on business for more than 1 year with a full time manager and as many as 45 employees. The fact that Ruth ate some meals at CCI and its employees ran personal errands for him is hardly a purpose for corporate existence so improper as to justify piercing the veil. The parties are also in dispute as to the point at which interest begins on any liability finally redetermined. In Lowy v. Commissioner,35 T.C. 393 (1960), we noted the distinction between the situations in which the value of transferred assets exceeded the transferor's liability and cases in which the value of the assets was insufficient. We noted that "When a tax is not paid the United States becomes entitled, by Federal statute, not only to the tax and additions * * * but also for interest * * * from the due date * * *." Lowy v. Commissioner,supra at 394. In such a situation, when interest accrues on the transferor's tax liability the transferee is merely satisfying the whole of the transferor's tax liability which may be collected from him pursuant to section 6901. However, *616 this is one of those situations: where the amount of the transferred assets is less than the amount of the creditor's claim, and where, in order to make the creditor whole, it may be necessary to find some liability against the transferee for interest in respect of the transferred assets. Such interest, by its very nature, can arise only under State law, and must comply in every respect with applicable State law not only as to rate, but also as to the starting point. * * * [Lowy v. Commissioner,supra at 395. Emphasis supplied.] We considered this precise question under Florida law in Stone v. Commissioner,T.C. Memo. 1985-405. Here, as in Stone, the transfer "did nothing more than place petitioner in the [transferor's] shoes as debtor to the extent of the transferred assets. Thus, a 'debt [was] * * * actually due' [citation omitted] from petitioner as of the time of the transfers." Stone v. Commissioner,T.C. Memo. 1985-405, 50 T.C.M. 683, 685, 54 P-H Memo. T.C. par 85,405 at 85-1799. We further held in Stone that the Government's claim against the transferor, and hence the petitioner therein, was a liquidated claim upon which prejudgment interest accrues under Florida law. Town of Long Boat Key v. Carl E. Widell & Son,362 So. 2d 719, 723 (Fla. Dist. Ct. App. 1978). *617 A recent decision by a Florida appellate court has more clearly defined the rule, holding that "a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." Bergen Brunswig Corp. v. State Department of Health and Rehabilitative Services,415 So. 2d 765, 767 (Fla. Dist. Ct. App. 1982). Petitioner became liable as Ruth's transferee on the date of the transfer. We therefore conclude that petitioner is liable for interest from the date of the transfer at the rate of 12 percent as prescribed by Fla. Stat. sec. 55.03 (1969). [17]
However, interest as a matter of state law runs only from the time of the transfer until the time respondent's statutory notice was issued. This distinction was recognized in Estate of Stein v. Commissioner,37 T.C. 945, 959-961 (1962), where we stated that: The Fifth Circuit recently faced this very question in Patterson v. Sims,281 F.2d 577 (5th Cir. 1960). That case held that State law determines the existence and extent of *618 the interest liability of a transferee from the time of transfer to the date notice of deficiency is sent to the transferee. The basis for this result is that respondent in a transferee case is in the position of a creditor of the transferor under State law, and if such creditor cannot collect interest under State law, respondent cannot do so here. The court also stated that upon sending the notice of deficiency to the transferee, respondent is entitled to interest thereon just as he is so entitled on any deficiency. * * * Reinforced by [Commissioner v.] Stern and by Patterson v. Sims,supra, we * * * hold that where a transferee receives assets insufficient to satisfy the transferor's tax liabilities, determination of the existence, starting date, and rate of interest upon the retention of those assets prior to demand therefor is controlled by State Law. [Fn. ref. omitted.] Therefore, interest accruing after the issuance of the statutory notice of liability is a matter of Federal law, to be determined in accordance with the provisions of the Internal Revenue Code. Having so decided, Decision will be entered under Rule 155.
Footnotes
1. Includes assessed interest accrued up to the date the statutory notice as issued in the aggregate amount of $ 46,249.38. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. We cannot on this record determine which of the advances item by item or in the aggregate fell into the category which petitioner hoped Ruth would repay. ↩
4. Tax liabilities for 1976 through 1979 represent Federal income taxes and additions to tax. 5. A transferee is retroactively liable for the transferor's taxes in the year of transfer and prior years. Kreps v. Commissioner,42 T.C. 660, 670 (1964), affd. 351 F.2d 1↩ (2d Cir. 1965). Ruth's Federal income tax liability has been stipulated by the parties as that amount expressed in this Court's decision of May 10, 1985. 6. Neither of the parties focused on the fact that at the time of the transfer Ruth owned all the stock of CCI and Vida Corporation which would have been subject to the claims of Ruth's creditors. Indeed, CCI's Federal income tax return for the fiscal year ending February 28, 1979, reveals stockholder's equity of almost $ 69,000. However, the parties' stipulation of Ruth's assets included stock in neither corporation. Because neither party raised the issue, we need not consider the question or the effect its resolution would have on the outcome of this case. In any event, we have no way of determining the fair market value of the stock in either corporation. ↩
7. Fla. Stat. sec. 726.01 (1969), as derived from an 1823 statute, reads as follows: Every feoffment, gift, grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or any of them, or any lease, rent, use, common or other profit, benefit or charge whatever, out of lands, tenements, hereditaments or goods and chattels, or any of them, by writing or otherwise, and every bond, note, contract, suit, judgment and execution which shall at any time hereafter be had, made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose of intent to delay, hinder of defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures, shall be from henceforth as against the person or persons, or bodies politic or corporate, his, her or their successors, executors, administrators and assigns, and every one of them so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect, any pretense, color, feigned consideration, expressing of use or any other matter or thing to the contrary notwithstanding; provided, that this section, or anything therein contained, shall not extend to any estate or interest in lands, tenements, hereditaments, leases, rents, uses, commons, profits, goods or chattels which shall be had, made, conveyed or assured if such estate shall be, upon good consideration and bona fide, lawfully conveyed or assured to any person or persons, or body politic or corporate, not having at the time of such conveyance or assurance to them made any manner of notice or knowledge of such covin, fraud or collusion as aforesaid, anything in this section to the contrary notwithstanding. 8. Respondent has filed notices of jeopardy and termination assessments against Ruth and numerous tax liens against Ruth individually and as nominee of certain corporations in which he was the sole shareholder. None of these efforts have met with success. Petitioner has not shown that any such efforts would have met with success; she did not address the matter on brief. We therefore find that respondent has proven this requirement to be satisfied. ↩
9. In computing the value of the assets transferred, encumbrances are substracted from the fair market value of the property. Stokes v. Commissioner,22 T.C. 415, 428↩ (1954). 10. See Kreps v. Commissioner,42 T.C. 660 (1964), affd. 351 F.2d 1↩ (2d Cir. 1965). 11. Petitioner argues that her interest in the joint properties should be included in Ruth's assets for the purpose of determining his solvency. This argument assumes that a joint tenancy may not be partitioned except by voluntary act of the parties to the cotenancy; it further assumes that petitioner's interest may be reached by Ruth's creditors. We think that the Florida courts would hold that a "joint tenancy may * * * be severed involuntarily, as by an execution sale of any interest that is subject thereto * * *." 12 Fla. Jur. 2d Cotenancy and Partition section 8 (1979), as quoted in McDowell v. Trailer Ranch, Inc.,421 So. 2d 751 (Fla. Dist. Ct. App. 1982). We also think that Florida would follow "The general rule * * * that the interest of a joint tenant or a tenant in common may be subjected to a levy and sale under execution for his individual debt, whether the property consists of realty or of personalty." 30 Am. Jur. 2d Executions sections 154(1967). See also cases assembled at 51 A.L.R.4th 1465 (1987). The parties have stipulated that at the time of the transfer, Ruth owned a 50-percent joint tenancy interest with petitioner in three different parcels of real property. Only Ruth's interest in such property may be considered as an asset in applying the bankruptcy insolvency test since his creditors could not reach petitioner's interest in those properties. Brown v. Commissioner,24 T.C. 256, 266-267↩ (1955). 12. See n. 6, supra.↩
13. Our determination of insolvency makes it unnecessary to determine if Ruth's transfer was made with the intent to defraud the Government. See Neill v. Phinney,245 F.2d 645↩ (5th Cir. 1957). 14. Even if such advances could be characterized as loans, they are at most loans payable only when Ruth was able to do so. Under the majority view, which had been adopted by two divisions of the Florida Court of Appeals, such a debt is enforceable, but only upon proof of the debtor's ability to repay. Zane v. Mavrides,394 So. 2d 197 (Fla. Dist. Ct. App. 1981); Hammond v. Bicknell,379 So. 2d 680↩ (Fla. Dist. Ct. App. 1980). Were we called upon to decide the point, we think that in view of the Government's priority (due to the failure of petitioner to perfect her position as a creditor under state law), Ruth would not have been able to repay without defrauding the Government. Hence, the debt would not have been enforceable, and therefore there would have been no valid consideration. 15. Florida Statutes sec. 607.151 (1969) reads in pertinent part as follows: (1) The officers of a corporation shall consist of a president, a secretary, and a treasurer, * * *. (3) Any two or more offices may be held by the same person. ↩
16. Respondent has not argued that the transfer of the CCI property perpetrated a fraud upon Ruth's creditors by reducing the value of Ruth's CCI stock. Rather, respondent argued only that CCI's corporate veil should be pierced, an argument which we reject. While certain inferences may be drawn concerning the value of Ruth's CCI stock (see n. 6 supra↩), respondent's failure to argue the point, whether by accident or design, leaves us with no basis for any finding of fact that would support a position contrary to that reached here. 17. The 12-percent rate is equally applicable to prejudgment interest. Taylor v. New Hampshire Insurance Co. of Manchester,489 So. 2d 207↩ (Fla. Dist. Ct. App. 1986).