T.C. Memo. 2016-8

UNITED STATES TAX COURT

SANDRA K. SHOCKLEY, TRANSFEREE, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 28207-08, 28208-08,     Filed January 11, 2016.
            28210-08.

Jenny L. Johnson, Aharon S. Kaye, Guinevere M. Moore, Ziemowit T.

Smulkowski, and Alexander S. Vesselinovitch, for petitioners.

Lyle B. Press, Steven N. Balahtsis, and Gail Campbell, for respondent.

_____

[1]Cases of the following petitioners are consolidated herewith: Terry K. Shockley, Transferee, docket No. 28208-08; and Shockley Holdings, Limited Partnership, Transferee, docket No. 28210-08.

[*]This opinion supplements our previously filed opinions Shockley v. Commissioner, T.C. Memo. 2015-113, and Shockley v. Commissioner, T.C. Memo. 2011-96, rev'd and remanded, 686 F.3d 1228 (11th Cir. 2012).

[*2]     SECOND SUPPLEMENTAL MEMORANDUM OPINION

COHEN, Judge:  These cases remain before the Court on petitioners' motion under Rule 161 for reconsideration of our Supplemental Memorandum Opinion in Shockley v. Commissioner, T.C. Memo. 2015-113 (Shockley III), on remand from 686 F.3d 1228 (11th Cir. 2012) (Shockley II), rev'g and remanding T.C. Memo. 2011-96 (Shockley I).  In Shockley III we held, inter alia, that petitioners were liable as transferees, under both Wisconsin law and section 6901(a), for the Federal income tax liability, additions to tax, and accuracy-related penalty of Shockley Communications Corp. (SCC) for its short tax year ended May 31, 2001.  Id. at *52.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners also filed a motion to vacate decisions under Rule 162.  We vacated the decisions to allow time for us to address interest issues that the parties agreed were not sufficiently addressed in Shockley III.  Respondent has provided estimates of prenotice and postnotice interest (discussed infra), as follows:

**[*3]**

|  |  | Interest | |
|---|---|---|---|
| Petitioner | Amount received as transferee | Prenotice[1] (8/15/01[3]-8/21/08[4]) | Postnotice[2] (8/22/08-11/14/15[5]) |
| Sandra K. Shockley | $11,244,084.42 | $4,725,556.37 | $3,253,648.20 |
| Terry K. Shockley | 10,975,059.03 | 4,612,492.94 | 3,175,801.58 |
| Shockley Holdings, LP | 4,053,709.13 | 1,703,654.15 | 1,173,002.89 |

[1]Prenotice interest is calculated pursuant to Wis. Stat. sec. 138.04 (2001-2002).

[2]Postnotice interest is calculated pursuant to sec. 6601(a).

[3]Aug. 15, 2001, is the date that SCC's income tax payment was due for its short year ended May 31, 2001. See secs. 6151(a), 6072(b).

[4]Aug. 21, 2008, is the date the transferee notice of liability statements were issued.

[5]Nov. 14, 2015, is an arbitrary ending date selected by respondent to perform the interest estimate.

## Background

For convenience and clarity, we repeat below the facts found in our prior Memorandum Opinions that are necessary for the disposition of this motion for reconsideration. Terry K. Shockley and Sandra K. Shockley resided in Florida at the time they filed their petitions. Shockley Holdings, L.P.'s principal place of business was Florida at the time it filed its petition.

[*4] Petitioners received the following distributions from SCC:

| Date of distribution | Terry K. Shockley | Sandra J. Shockley | Shockley Holdings |
|---|---|---|---|
| May 31, 2001 | $8,478,007.29 | $8,747,032.68 | $3,190,032.69 |
| July 24, 2001 | 297,596.00 | 297,596.00 | 102,932.00 |
| Sept. 10, 2001 | 212,201.39 | 212,201.39 | 73,395.88 |
| Sept. 25, 2001 | 678,537.29 | 678,537.29 | 234,691.39 |
| Oct. 30, 2001 | 12,081.41 | 12,081.41 | 4,178.70 |
| Dec. 21, 2001 | 40,755.17 | 40,755.17 | 14,096.33 |
| Jan. 25, 2002 | 10,174.73 | 10,174.73 | 3,519.22 |
| Dec. 20, 2002 | 14,773.75 | 14,773.75 | 5,109.92 |
| June 6, 2003 | 1,029,068.00 | 1,029,068.00 | 355,932.00 |
| Oct. 29, 2003 | 201,864.00 | 201,864.00 | 69,821.00 |
| Total | 10,975,059.03 | 11,244,084.42 | 4,053,709.13 |

On September 6, 2007, the Internal Revenue Service (IRS) assessed the following amounts against SCC for the tax year ended May 31, 2001: (1) corporate income tax of $41,566,515; (2) an addition to tax under section 6651(a)(1) of $2,078,276; (3) an accuracy-related penalty under section 6662 of

**[\*5]** $8,313,303; and (4) interest of $26,953,309.60.  The IRS sent to petitioners transferee notice of liability statements on August 21, 2008.

Discussion

Reconsideration under Rule 161 serves the limited purpose of correcting substantial errors of fact or law and allows the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding.  Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998); accord Fed. R. Civ. P. 60(b).  Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party.  Estate of Quick v. Commissioner, 110 T.C. at 441-442.  The decision of whether to grant a motion for reconsideration rests within the discretion of the Court and generally requires a showing of unusual circumstances or substantial error.  CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982), aff'd, 755 F.2d 790 (11th Cir. 1985).

As grounds for their motion, as supplemented in their supporting memorandum, petitioners argue that:  (1) SCC was never shown to be insolvent as a result of the transfer; (2) Wisconsin fraudulent transfer law does not incorporate the substance over form doctrine; and (3) the economic substance doctrine was not

**[\*6]** properly applied. These concerns were addressed in <u>Shockley III</u>, and petitioners' arguments do not demonstrate that substantial error or unusual circumstance exists or that reconsideration is otherwise warranted.

Petitioners further argue that four issues--involving the determination of the amount of the liability--should be considered: (1) the correct amount of petitioners' "windfall"; (2) equitable recoupment; (3) liability for penalties; and (4) liability for interest. The first three of these issues are newly raised theories that appear to be introduced only to reach a more desirable result for petitioners. These issues could have been raised before trial, and we do not consider them now.

With respect to the fourth issue, the parties first argued transferee liability for interest on brief in this proceeding. This Court generally does not consider issues raised for the first time on brief. Rule 34(b)(4). However, because we agree with the parties that clarification of this issue is necessary, we proceed to determine petitioners' liability for interest and calculation of the correct amounts. See <u>LTV Corp. v. Commissioner</u>, 64 T.C. 589, 597 n.15 (1975) (recognizing the Court's jurisdiction over interest in connection with transferee liability).

Interest in transferee liability cases is calculated in accordance with two separate periods--prenotice and postnotice--and, under some circumstances, two

**[\*7]** separate rates.  See generally Estate of Stein v. Commissioner, 37 T.C. 945

(1962).  The postnotice interest period starts from the date when the notice of

liability is issued and runs to whenever the liability is fully paid.  See Patterson v.

Sims, 281 F.2d 577, 580 (5th Cir. 1960) (citing as authority section 294 of the

Internal Revenue Code of 1939, predecessor of sections 6601, 6651(c), and

6654(a)); Estate of Stein v. Commissioner, 37 T.C. at 959.  Interest accruing in

this period is determined under section 6601.  Estate of Stein v. Commissioner, 37

T.C. at 959 (referencing the same section in the Internal Revenue Code of 1954);

see also section 6621 (establishing the interest rate).

Determining the earlier prenotice interest period depends upon the amount

of assets the transferee received.  If the transferee received assets in excess of the

transferor's liability, then the period would run from the date that the transferor's

tax payment was due up to the date the notice of liability was issued, and interest

would still be determined under Federal law.  See Estate of Stein v. Commissioner,

37 T.C. at 961; Lowy v. Commissioner, 35 T.C. 393, 394-395 (1960).  If, as in

these cases, the transferee received assets less than the creditor's claim against the

transferor, then the period is "measured from a point of time that would not be

earlier than the date of transfer" up to (but not including) the notice of liability

issue date.  Lowy v. Commissioner, 35 T.C. at 395; see Patterson, 281 F.2d at 580

**[*8]** (determining the prenotice interest period to be "prior to the date" on which the transferee received the notice of liability). In this instance interest, including its applicable rate, is determined under State law. See Lowy v. Commissioner, 35 T.C. at 395. The reasoning behind prenotice interest is that the Government may be entitled to interest for this period as compensation for the transferee's "wrongful use" of those assets. Id. at 397.

Petitioners first argue that they cannot be held liable for any interest because respondent failed to issue any notices of liability. The basis of their argument is that the IRS issued "two" notices of deficiency on August 21, 2008, instead of issuing notices of liability as required by section 6901.

We reject this argument, having already found that the IRS sent to each petitioner a transferee notice of liability statement on August 21, 2008. Shockley III, at *24; Shockley I, slip op. at 9. While no particular form is prescribed for a notice of transferee liability, it must (1) determine transferee liability and (2) notify the transferee that the liability will be assessed. See Kellogg v. Commissioner, 88 T.C. 167, 175 (1987); see also Oyer v. Commissioner, T.C. Memo. 2003-178, slip op. at 14 n.7 (equating the deficiency procedures for transferee liability cases, including the mailing of the requisite notice, with those of deficiency cases), aff'd, 97 F. App'x 68 (8th Cir. 2004).

**[\*9]** Despite being titled "notice of deficiency", the notices of liability sent to petitioners meet and exceed these requirements. Cf. McGarvie v. Commissioner, T.C. Memo. 1988-85, 55 T.C.M. (CCH) 264, 273 (1988) (holding that errors--made in a notice of deficiency--do not render that notice invalid if they do not mislead a taxpayer as to the nature or amount of the Commissioner's adjustments). The first page of each of the three notices confirms that a set portion of SCC's deficiency is to be assessed against the respective petitioner as a transferee of SCC's assets. The notices also include pages clearly titled "TRANSFEREE NOTICE OF LIABILITY STATEMENT", which explain the IRS' determination of transferee liability and directly state that "[t]he amounts above reflect your liability as a transferee of assets of Shockley Communications Corporation, for the unpaid deficiency of income tax due from Shockley Communications as shown below". The notices then show the tax period, the unpaid tax, and the penalties and also inform that "[i]n addition, you are liable for interest as computed under all applicable federal and state laws." These notices were sufficient and valid notices of liability. Accord Shockley II, 686 F.3d at 1233 (finding that the IRS mailed "notices of transferee liability" to petitioners).

Petitioners next argue that they did not have SCC assets "in their hands" when SCC's tax liabilities accrued. The Court, however, held that petitioners are

**[*10]** transferees of SCC and received distributions from the proceeds of the sale of its assets.  Shockley III, at *41, *47.  We thus dismiss this argument as it requires the form of the overall transaction to be respected--contrary to our ruling that it be disregarded.

We are unpersuaded by the above arguments.  As petitioners' remaining arguments pertain only to prenotice interest, we hold that they are liable for postnotice interest and next consider prenotice interest.

Because petitioners, as transferees, received assets less than SCC's tax liability, Wisconsin law must determine the extent to which petitioners are liable for prenotice interest.  Wisconsin caselaw provides considerable authority on the award of interest accruing prior to a judgment--applicable here because such a "prejudgment" period may permit and define the prenotice period in issue.

Wisconsin law has long held that a party can recover prejudgment interest but only on damages that are either liquidated or determinable by a "reasonably certain standard of measurement".  Laycock v. Parker, 79 N.W. 327, 335 (Wis. 1899); see Wyandotte Chems. Corp. v. Royal Elec. Mfg. Co., 225 N.W.2d 648, 652-653 (Wis. 1975) (echoing the rule of Laycock); see also Beacon Bowl, Inc. v. Wis. Elec. Power Co., 501 N.W.2d 788, 802 (Wis. 1993) ("If the damages are liquidated or determinable, a defendant can avoid the accrual of interest by

**[*11]** tendering the amount of the damages to the plaintiff."). "The rule of course is that the debtor should pay interest from the time when he ought to have paid the debt * * * [as] fixed by law". Laycock, 79 N.W. at 335; see Sulzer v. Diedrich, 654 N.W.2d 67, 72 (Wis. Ct. App. 2002) ("Interest is normally awarded where one party has wrongfully retained use of a second party's money."). In the absence of a specific contractual rate of interest, prejudgment interest is calculated at the legal rate of 5% pursuant to Wis. Stat. sec. 138.04 (2001-2002). See Kilgust Heating v. Kemp, 235 N.W.2d 292, 295 n.2 (Wis. 1975).

Petitioners identify three exceptions to prejudgment interest that they contend they fall within. Citing Wyandotte, they argue that Wisconsin courts observe these exceptions to the recovery of prejudgment interest: (1) the party seeking damages has instituted suit against more than one party and alleges joint liability for the damages; (2) the withholding party reasonably disputes whether the law applies to that party; and (3) there are policy considerations that prevent the assessment of prejudgment interest.

With respect to petitioners' first argument, a Wisconsin court generally does not award prejudgment interest where a plaintiff seeks damages from more than one defendant. See, e.g., City of Franklin v. Badger Ford Truck Sales, Inc., 207 N.W.2d 866, 874 (Wis. 1973). The underlying policy concern for this exception is

[*12] that "the existence of multiple defendants prevents any single defendant from knowing prior to trial the precise amount of his ultimate liability" and therefore tender that amount so that interest will not accrue. Johnson v. Pearson Agri-Sys., Inc., 350 N.W.2d 127, 135 (Wis. 1984); see Laycock, 79 N.W. at 335. Petitioners thus contend that they have no way of knowing their exact liabilities because respondent has pursued not only them for SCC's tax liability but also four other parties in similar actions.

Petitioners' tax liabilities, however, are determinable--despite that there are multiple cases involving the same SCC tax liability. Because SCC's liability for income tax, additions to tax, penalty, and interest exceeds the amounts SCC transferred to petitioners, their liabilities are limited to the transferred amounts with interest. See Lowy v. Commissioner, 35 T.C. at 395-396; see also Yagoda v. Commissioner, 39 T.C. 170, 185 (1962) (determining that the transferee was accountable "up to an amount not in excess of what had been distributed to her"), aff'd, 331 F.2d 485 (2d Cir. 1964). Petitioners were able to determine their liabilities before trial, and each set liability could not be attributed or apportioned to any other transferee.

Additionally, petitioners are not disadvantaged as a result of multiple transferee cases stemming from the same transferor's tax liability.

> **[*13]** A transferee is severally liable for the unpaid tax of the transferor to the extent of the assets received and other stockholders or transferees need not be joined. Phillips v. Commissioner, 283 U.S. 589 [(1931)]. In the event that one transferee is called upon to pay more than his pro rata share of the tax, he is left to his rights of contribution from the other transferees.

Estate of Harrison v. Commissioner, 16 T.C. 727, 731 (1951) (construing section 311 of the Internal Revenue Code of 1939, predecessor to section 6901); see also Alexander v. Commissioner, 61 T.C. 278, 295 (1973) (holding that "[t]ransferee liability is several" under section 6901). Because having multiple transferee-petitioners does not prevent any single petitioner from knowing before trial the precise amount of his, her, or its ultimate liability, this first exception does not apply. Accord In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979, 480 F. Supp. 1280 (N.D. Ill. 1979) (holding that plaintiffs were entitled to prejudgment interest under Wisconsin law where defendants were jointly and severally liable for damages (under Illinois law) with no right to apportionment but a right of contribution), aff'd, 644 F.2d 633 (7th Cir. 1981).

Petitioners next argue that they cannot be liable for prejudgment interest because they reasonably questioned whether the statute of limitations prevented the application of section 6901. See Shockley I; Shockley II. They assert that an exception arises where the withholding party reasonably challenges the application

**[\*14]** of law to the circumstances. Relying on <u>Luber v. Milwaukee Cty.</u>, 177 N.W.2d 380 (Wis. 1970), and <u>State ex rel. Schilling v. Baird</u>, 222 N.W.2d 666 (Wis. 1974), as authority, they contend that where defendants do not tender payment because they justifiably challenge the application of a law--on the basis of issues such as constitutionality or the interpretation of what is required under the law--then prejudgment interest should be denied.

Petitioners misinterpret this exception to prejudgment interest. In <u>Luber</u>, 177 N.W.2d at 387, the Wisconsin Supreme Court held that prejudgment interest could not be recovered on a claim of lost rent where the parties disputed the constitutionality of the statute under which the amount of the plaintiff's claim was computed. In <u>Schilling</u>, 222 N.W.2d at 671, the same court determined that prejudgment interest could not be recovered where, inter alia, the parties disputed a law regarding a credit that would legally define the amount of damages recoverable in the action. These cases address challenges to statutes that affect how a plaintiff's claims or damages are computed, thus conforming with Wisconsin's overarching concern that damages be determinable for prejudgment interest to be allowable.

In contrast, petitioners' dispute over the statute of limitations affected only the enforceability of their liabilities, not the amounts of them. Thus, this

**[*15]** exception is not applicable. Accord U.S. Fire Ins. Co. v. Good Humor Corp., 496 N.W.2d 730, 741 (Wis. Ct. App. 1993) ("The question is whether the amount of the claim is determinable, not whether the cause of action is disputed. * * * A dispute as to liability has never been recognized as a bar to the payment of interest.").

Petitioners lastly argue that a third exception to prejudgment interest applies when policy considerations weigh against such an accrual. As an example they identify a case where a plaintiff was denied an award of prejudgment interest because it claimed damages nearly double what it was able to prove at trial. See Congress Bar & Rest., Inc. v. Transam. Ins. Co., 165 N.W.2d 409 (Wis. 1969).

The policy consideration of Congress Bar is that the court refused to award prejudgment interest because it did not want to encourage overstatements of claims. Id. at 417. Respondent's claims, if they can be called that, are not overstated but are in the amounts prescribed by law, i.e., the amounts transferred to petitioners plus interest. Petitioners fail to explain how this (or any other) policy consideration corresponds to their cases. Accordingly, petitioners do not fall under this exception.

Because petitioners' tax liabilities are determinable and no exceptions appear to apply, we hold that petitioners are liable for prenotice interest as

[*16] determined under Wisconsin State law regarding prejudgment interest. We now consider proper calculation of prenotice interest.

We have determined two mistakes with respect to respondent's calculations of prenotice interest shown <u>supra</u>. As discussed, prenotice interest is to be calculated no earlier than the date of transfer. Respondent has calculated prenotice interest on the basis of each petitioner's full transferee liability, using August 15, 2001 (the date SCC's payment was due), as the starting point. However, petitioners received many transfers over time. Only two distributions occurred before August 15, 2001; the remaining eight distributions were separately and subsequently received after that date. Accordingly, respondent must recalculate prenotice interest properly to reflect these different transferred amounts accruing at different intervals during the period of August 15, 2001, through October 29, 2003.

The second mistake is that the postnotice interest calculation should start from the date the notice of liability was issued. To determine the starting date for postnotice interest, the Court of Appeals in <u>Patterson</u>, 281 F.2d at 580-581, relied on section 294 of the Internal Revenue Code of 1939. That section, with regard to a tax payment not paid within 10 days from the date of notice and demand, provided that interest shall be collected upon the unpaid amount "from the date of

**[*17]** such notice and demand until it is paid." Sec. 294(b), I.R.C. 1939. Therefore, under <u>Patterson</u>, as relied upon by <u>Estate of Stein</u> and <u>Lowy</u>, the starting date for postnotice interest is the date the notice of liability is issued.

As Federal law controls from the date the notice of liability is issued, prenotice interest under State law, as applicable here, can run only up to that date of issuance. Therefore, respondent must recalculate postnotice interest as starting from August 21, 2008, and prenotice interest as ending on August 20, 2008.

In reaching our decisions, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and appropriate decisions will be entered</u>.