T.C. Memo. 2016-132

UNITED STATES TAX COURT

MICHAEL A. TRICARICHI, TRANSFEREE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 23630-12.                          Filed July 18, 2016.

Michael J. Desmond, for petitioner.

Heather L. Lampert, Julie Ann P. Gasper, Candace M. Williams, Katelynn

M. Winkler, and Daniel L. Timmons, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

LAUBER, Judge: In our prior opinion, we found that petitioner is a trans-

feree of West Side Cellular, Inc. (West Side), under the Ohio Uniform Fraudulent

_____

[*]This opinion supplements our prior opinion, Tricarichi v. Commissioner,
T.C. Memo. 2015-201.

[*2] Transfer Act and section 6901.[1]  We accordingly held that petitioner is liable "for the full amount of West Side's 2003 tax deficiency and the penalties and interest in connection therewith."  Tricarichi v. Commissioner, T.C. Memo. 2015-201, at *68.  Although the notice of liability issued by the Internal Revenue Service (IRS or respondent) determined that petitioner's liability included "interest as provided by law," we noted that the parties in their briefs "h[ad] not addressed the proper computation of interest."  Id. at *29 n.7.  We accordingly directed that decision would be entered under Rule 155.  Id. at *69.

The parties have submitted competing Rule 155 computations.  They agree that, under the Court's prior opinion, petitioner is liable for West Side's 2003 income tax deficiency, in the amount of $15,186,570, and for the section 6662 penalties assessed against West Side, in the aggregate amount of $6,012,777.  They also agree that, under the Court's prior opinion, petitioner is liable, in an amount to be determined, for "post-notice interest"--that is, interest that has accrued on West Side's liability under section 6601 since June 25, 2012, the date on which the IRS issued the notice of liability to petitioner.

_____

[1]Unless otherwise noted, all statutory references are to the Internal Revenue Code as in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[\*3]**   The parties disagree, however, on whether petitioner is liable for "pre-notice interest," that is, interest that accrued on West Side's liability between March 15, 2004, when its 2003 corporate income tax return was due to be filed and its tax was due to be paid, and June 25, 2012.  Respondent contends that petitioner's liability for pre-notice interest must be determined under Federal law and computed under section 6601; respondent has calculated this amount as $13,887,090.  Petitioner contends that his liability (if any) for pre-notice interest must be determined under State law and that, under Ohio judicial decisions interpreting that State's rules governing pre-judgment interest, his liability for pre-notice interest is zero.  We agree with respondent and will enter decision accordingly.

## Background

Petitioner owned 100% of West Side's stock.  On September 9, 2003, in a "Midco" transaction engineered by Fortrend International, Inc., he received $35,199,372 in exchange for his West Side shares.  Petitioner resided in Ohio when the Midco transaction was consummated.  He moved shortly thereafter to Nevada, and he resided in Nevada at the close of the 2003 taxable year and when he petitioned this Court.

West Side's corporate income tax return for 2003 was due to be filed on March 15, 2004.  Following an examination of that return, the IRS issued to West

**[*4]** Side a notice of deficiency determining a deficiency of $15,186,570 and penalties under section 6662 in the aggregate amount of $6,012,777.  After West Side failed to petition this Court, the IRS in July 2009 assessed against West Side the deficiency and penalties determined in the notice of deficiency, plus accrued interest.

Finding West Side bereft of assets, the IRS performed a transferee liability examination of petitioner.  On June 25, 2012, the IRS mailed petitioner a Letter 902-T, Notice of Liability, determining that he is liable for West Side's unpaid 2003 deficiency and assessed penalties "plus interest as provided by law."  In our prior opinion we upheld that determination and directed the parties to file computations for entry of decision under Rule 155.  We subsequently directed them to file, and they did file, supplemental memoranda addressing petitioner's liability vel non for pre-notice interest.

## Discussion

Interest in transferee liability cases is calculated for two separate periods-- the pre-notice period and the post-notice period--and under certain circumstances it may be calculated at different rates.  The post-notice interest period begins on the date when the notice of liability is issued and ends on the date when the liability is fully paid.  See Patterson v. Sims, 281 F.2d 577, 580 (5th Cir. 1960).  In-

**[*5]** terest accruing during this period is determined under sections 6601 and 6621. Because the parties agree that petitioner would be liable for post-notice interest under the Court's prior opinion, we need not discuss that subject further.

Pre-notice interest presents additional questions. Depending on the value of the assets received by the transferee and the aggregate tax liability owed by the transferor, the calculation of pre-notice interest may involve Federal and/or State law. These variables may also affect the rate at which interest is calculated and the date on which interest begins to accrue. Most State laws refer to the interest that may accrue during this period as "pre-judgment interest." We will use the term "pre-judgment interest" to refer to interest that may accrue under State law during the pre-notice period.

Our first comprehensive discussion of these issues appeared in Lowy v. Commissioner, 35 T.C. 393 (1960). In that case the corporate transferor's liability for tax and penalties was $186,748, and the taxpayer, its sole stockholder, received as transferee corporate assets worth more than $1 million. Id. at 394. We held that where (as there) the value of the assets distributed to the transferee substantially exceeded the transferor's aggregate liability for deficiencies, penalties, and interest, the transferee's liability for interest is governed by, and must be computed in accordance with, the Internal Revenue Code. Id. at 397.

**[\*6]**    Speaking for the Court, Judge Raum recognized that, under <u>Commissioner</u> <u>v. Stern</u>, 357 U.S. 39 (1958), "the liability of the transferee as such must arise under applicable State law."  <u>Lowy v. Commissioner</u>, 35 T.C. at 395; <u>see</u> <u>id.</u> at 396 (noting that State law determines "the existence and extent of transferee liability").  He continued:

> [B]ut the quantum of the creditor's right--i.e., the amount of tax due, the additions to tax for negligence or fraud, and the amount of interest applicable thereto--must, of necessity, be determined in accordance with the Federal statute.  Certainly, it is the Internal Revenue Code and not New York law which fixes the amount of deficiency in tax. And it is similarly the Internal Revenue Code, rather than State law, which spells out the right of the Government to the so-called penalties and interest.  These amounts in the aggregate constitute the claim of the United States against the taxpayer-transferor and they similarly measure the claim against the transferred assets.  [<u>Id.</u> at 395.]

The taxpayer in <u>Lowy</u> cited earlier cases in which courts had applied State law to calculate pre-judgment interest; he urged that, under New York law, "he * * * [was] not liable for any interest" before the date on which the notice of liability was mailed to him.  <u>Id.</u> at 394, 396.  Judge Raum distinguished those cases as involving "a situation where the amount of the transferred assets * * * [wa]s less than the amount of the creditor's claim."  In those cases, he explained, the courts properly considered the availability of pre-judgment interest "in order to

**[\*7]** make the creditor whole." Id. at 395. He noted that pre-judgment interest by its very nature

> can arise only under State law, and must comply in every respect with applicable State law not only as to rate, but also as to the starting point. Thus, if the transferred assets herein had been equal to only $100,000, substantially less than the amount of the basic deficiencies, they would plainly have been insufficient to satisfy the Government's claim. However, in such circumstances, the transferee would have had the use of the transferred assets over a period of time, and it is quite possible that he would be liable, under State law, for interest, not on the Government's claim against the transferor, but on the amount of the transferred assets, measured from a point of time that would be not earlier than the date of transfer. [Ibid.]

Surveying cases dating back to Cappellini v. Commissioner, 16 B.T.A. 802 (1929), we concluded in Lowy that "the quantum of the underlying claim that the * * * [IRS] is seeking to enforce against the transferee must be determined by the law which created that claim," namely, the Internal Revenue Code. 35 T.C. at 396. Because the transferor's liability for tax, penalties, and interest is determined by the Federal statute, we deemed it "wholly inappropriate * * * , where the transferred assets are more than ample to discharge the full Federal liability of the transferor (including interest), to look to State law for the creation of any right to interest." Id. at 397. On the other hand, "where the transferred assets are insufficient" to satisfy the IRS' claim against the transferor, "the creditor may have a further right to collect interest from the transferee, based upon the wrongful use of

**[\*8]** those assets by the transferee prior to payment." Ibid. "The latter right is one that is founded on State law, and it is only in such circumstances that it becomes appropriate to investigate State law to determine the rate of interest, [and] the date from which it runs." Ibid.

We employed the same analysis two years later in Estate of Stein v. Commissioner, 37 T.C. 945 (1962). In that case the transferee had received assets with a value less than the transferors' aggregate liabilities for tax, penalties, and interest. We held that where (as there) "a transferee receives assets insufficient to satisfy the transferor's tax liabilities, determination of the existence, starting date, and rate of interest upon retention of those assets prior to demand therefor is controlled by State law." Id. at 961 (fn. ref. omitted). The distinction between that case and Lowy, we explained, hinged on the nature of the interest being charged.

> In cases where the transferred assets exceed the total liability of the transferor, the interest being charged is upon the deficiency, and is therefore a right created by the Internal Revenue Code. However, where, as here, the transferred assets are insufficient to pay the transferor's total liability, interest is not assessed against the deficiencies because the transferee's liability * * * is limited to the amount actually transferred to him. Interest may be charged against the transferee only for the use of the transferred assets, and since this involves the extent of transferee liability, it is determined by State law. [Ibid. (citing Commissioner v. Stern, 357 U.S. 39).]

**[*9]** During the ensuing 50 years, the analysis set forth in <u>Lowy</u> and <u>Estate of Stein</u> has been employed consistently both by this Court and by the Courts of Appeals that have considered the question. In <u>Schussel v. Werfel</u>, 758 F.3d 82 (1st Cir. 2014), <u>aff'g in part, rev'g in part, and remanding</u> T.C. Memo. 2013-32, the transferee had received assets worth $8.9 million, whereas the transferor's total Federal tax liability exceeded $13.6 million: roughly $2.8 million of tax, $2.1 million of penalties, and $8.7 million of pre-notice interest. <u>Id.</u> at 87. The First Circuit explicitly adopted the reasoning set forth in this Court's precedents. See <u>id.</u> at 89, 92 ("We therefore accept the IRS's invitation to follow <u>Lowy</u> and <u>Estate of Stein</u>[.]").

Describing the rule derived from this Court's precedents as a "simple" one, 758 F.3d at 92, the court of appeals offered an example to illustrate the principle for which <u>Lowy</u> stands: "[I]f the taxpayer owes $100 in taxes, upon which $30 in interest accrues, and the taxpayer then fraudulently transfers $150 to a transferee, the IRS can certainly recover a judgment of no less than $130 against the transferee." <u>Id.</u> at 89 & n.12 (citing <u>Lowy</u>, 35 T.C. at 394). The First Circuit accordingly held:

> The IRS may recover from * * * [the transferee] all amounts * * *
> [the transferor] owes to the IRS (including section 6601 interest
> accruing on * * * [the transferor's] tax debt), up to the limit of the

[*10] amount transferred to * * * [the transferee], with any recovery of prejudgment interest above the amount transferred to be determined in accordance with Massachusetts law. [Schussel, 758 F.3d at 92-93; emphasis added.]

The First Circuit in Schussel thus held the transferee liable for pre-notice interest, computed in accordance with Federal law, in the amount of approximately $4 million. That is the amount by which the assets the transferee received (roughly $8.9 million) exceeded the transferor's liability for tax and penalties (approximately $4.9 million). In remanding the case to our Court, the First Circuit disagreed with the IRS only in holding, consistently with Estate of Stein, that Massachusetts law, rather than Federal law, governed the transferee's liability for prejudgment interest above and beyond the value of the assets the transferee received. See Schussel, 758 F.3d at 92-93.

Other appellate authority is consistent with Schussel. In United States v. Holmes, 727 F.3d 1230 (10th Cir. 2013), the court found that the issue of pre-notice interest was not properly preserved for appeal. However, it stated in dictum that the District Court had supplied an appropriate "nutshell explanation" of the governing principles:

It appears to be fairly well established that where the value of the assets transferred exceeds the transferor's total tax liability, including penalties and interest, the transferee is liable for the entire amount of the deficiency and the amount of interest is prescribed by [F]ederal

**[\*11]** law * * * .  If the transferee receives less than the transferor's tax liability, state law determines the calculation of interest.  [Id. at 1236 n.6].

In Edelson v. Commissioner, 829 F.2d 828 (9th Cir. 1987), aff'g T.C. Memo. 1986-223, the transferee received assets with a value less than the transferor's total Federal tax liability.  Citing Estate of Stein with approval, the Ninth Circuit ruled: "Where transferee liability is found to exist but the transferred assets are insufficient to satisfy the transferor's total tax liability, a transferee's liability for interest is controlled by state law."  Id. at 834.[2]

We addressed this subject recently in Shockley v. Commissioner, T.C. Memo. 2016-8.  Reviewing the relevant case law, including Lowy and Estate of Stein, we summarized the applicable legal principles as follows:

---

[2]Absent stipulation to the contrary, appeal of the instant case would lie to the Ninth Circuit.  See sec. 7482(b)(2).  Although the Ninth Circuit in Edelson explicitly followed Estate of Stein, that court does not appear to have addressed the fact pattern presented by Lowy, Schussel, and the instant case, where the transferee receives assets with a value exceeding the transferor's liability for tax and penalties, such that the transferred assets are available to discharge at least part (if not all) of the Government's claim for interest.  However, in a recent transferee liability case, Salus Mundi Found. v. Commissioner, 776 F.3d 1010 (9th Cir. 2014), rev'g and remanding T.C. Memo. 2012-61, the Ninth Circuit stated:  "As a general rule, the tax decisions of other circuits should be followed unless they are demonstrably erroneous or there appear cogent reasons for rejecting them."  Id. at 1019 (quoting Beecher v. Commissioner, 481 F.3d 717, 720 (9th Cir. 2007), aff'g T.C. Memo. 2004-99).  We believe that the Ninth Circuit would likely follow the First Circuit's holding in Schussel on the fact pattern presented here.

**[*12]** If the transferee received assets in excess of the transferor's liability, then the [pre-notice interest] period would run from the date that the transferor's tax payment was due up to the date the notice of liability was issued, and interest would * * * be determined under Federal law. * * * If, as in these cases, the transferee received assets less than the creditor's claim against the transferor, then * * * [pre-judgment] interest, including its applicable rate, is determined under State law. * * *

Id. at *7-*8; accord, e.g., Stansbury v. Commissioner, 104 T.C. 486, 491-493 (1995) (applying State law to compute pre-judgment interest where transferor's tax debt exceeded value of transferred assets), aff'd, 102 F.3d 1088 (10th Cir. 1996); Rubenstein v. Commissioner, T.C. Memo. 2010-274, 100 T.C.M. (CCH) 542, 542-543 & n.3 (same); Upchurch v. Commissioner, T.C. Memo. 2010-169, 100 T.C.M. (CCH) 85, 90-91 (applying Federal law to compute pre-notice interest where value of transferred assets exceeded transferor's tax debt); Borg v. Commissioner, T.C. Memo. 1987-596, 54 T.C.M. (CCH) 1243, 1248-1249 (same).

In the instant case West Side's total Federal tax liability for 2003, including tax, penalties, and pre-notice interest computed thereon, is $35,086,437 (that is, $15,186,570 of tax + $6,012,777 of penalties + $13,887,090 of pre-notice interest as determined by respondent). In our prior opinion we found that petitioner received, as West Side's transferee, cash and cash equivalents with an aggregate value of $35,199,372. See Tricarichi, at *58. Because petitioner received assets

**[*13]** with a value in excess of West Side's total Federal tax liability (including pre-notice interest), his liability for pre-notice interest is determined by Federal law.

Section 6621 specifies the interest rate(s) governing the computation of pre-notice interest. Under Federal law, the starting date for computing pre-notice interest is March 15, 2004, the date on which West Side's 2003 income tax return was due to be filed and tax payment was due, and the ending date is June 25, 2012, when the notice of liability was mailed. See Bos Lines, Inc., v. Commissioner, 354 F.2d 830, 839 (8th Cir. 1965), aff'g T.C. Memo. 1965-71; Estate of Stein, 37 T.C. at 961; Lowy, 35 T.C. at 394-395; Shockley, at *7. Respondent determined that petitioner's liability for pre-notice interest, computed using these parameters, is $13,887,090. Petitioner has raised no question about the accuracy of this calculation, and we find no error in it.

Petitioner does not dispute that the law governing pre-notice interest has evolved in the manner described above. However, emphasizing the Supreme Court's ruling in Stern that State law controls "the existence and extent" of transferee liability, 357 U.S. at 45, petitioner contends that pre-notice interest should be determined under State law because it goes to "the extent" of such liability. Asserting that the First Circuit's Schussel opinion "highlights the continued uncer-

**[\*14]** tainty regarding computation of pre-notice [interest]," petitioner urges that the <u>Lowy</u> line of cases "should be revisited" in order to ensure adherence to the Supreme Court's mandate concerning the proper role of State law.

We do not find these arguments persuasive. The Supreme Court issued its opinion in <u>Stern</u> almost 60 years ago, and the principal cases discussed above all post-date <u>Stern</u>. In developing the law concerning pre-notice interest, the courts have been fully conscious of, and properly faithful to, the Supreme Court's mandate. Far from manifesting uncertainty, the law that has evolved since <u>Lowy</u> appears quite stable and clear. <u>Schussel</u> is hardly a poster child for uncertainty: The IRS there urged that <u>Lowy</u> and <u>Estate of Stein</u> provided the critical guideposts, and the First Circuit explicitly followed the reasoning of both cases. We have no reason to suspect that the Ninth Circuit, to which this case would be appealable absent stipulation to the contrary, <u>see</u> sec. 7482(b)(2), would take a different stance, <u>see</u> <u>supra</u> p. 11 and note 2.

Contrary to petitioner's view, the logic of these cases is sound and fully consistent with <u>Stern</u>. The transferor's total Federal tax liability includes the tax deficiency, applicable penalties, and statutory interest computed thereon; all three components are necessarily determined under the Internal Revenue Code. The Government may recover the full amount of this liability from a transferee, but its

**[\*15]** recovery is capped at the value of the assets that the transferee actually received. If the transferee received assets with a value exceeding the transferor's total Federal tax liability, the Government's claim can be satisfied in full from the transferred assets. There is thus no need to consult State law.

On the other hand, if the transferee has received assets with a value less than the transferor's total Federal tax liability, the Government's claim will not be fully satisfied. The question then arises whether, as an equitable matter, the Government should be entitled to pre-judgment interest to compensate it for the transferee's wrongful possession and use of the funds during the interim period. A claim for pre-judgment interest is not created by the Internal Revenue Code, but by State law. State law thus necessarily governs "the existence and extent" of the creditor's right (if any) to pre-judgment interest. Stern, 357 U.S. at 45.

In short, the courts have consulted State law to ascertain whether the Government may recover from the transferee, in the form of pre-judgment interest, an amount <u>larger</u> than the value of the assets the transferee received. Petitioner has cited, and our own research has discovered, no case in which a court has invoked State law governing pre-judgment interest as a basis for reducing the Government's recovery to an amount <u>smaller</u> than the value of the assets the

[*16] transferee received.  That is what petitioner seeks to do here, and there is simply no precedent for it.[3]

To implement the foregoing,

<u>Decision will be entered in accordance with respondent's computation.</u>

---

[3]In contending that Ohio law would immunize him from liability for pre-judgment interest, petitioner relies chiefly on <u>Millstone Dev. Ltd. v. Berry</u>, No. 03AP-531, 2004 WL 503926 (Ohio Ct. App. Mar. 16, 2004) (holding that the interest provisions of Ohio Rev. Code sec. 1343.03 do not apply with respect to a judgment granting a lien).  Respondent disputes petitioner's interpretation of Ohio law.  Given our disposition, we need not resolve this State law question.